Argued and submitted September 8, 1982, affirmed July 26, 1983

## OCHOCO CONSTRUCTION, INC.,
*Respondents on Review,*

*v.*

## DEPARTMENT OF LAND CONSERVATION AND DEVELOPMENT et al,
*Petitioners on Review.*

(LUBA 80-031, CA A20450, SC 28537)

667 P2d 499

Mary J. Deits, Assistant Attorney General, argued the cause for petitioners on review, Department of Land Conservation and Development. With her on the briefs were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Douglas Fowler, Portland, argued the cause and filed the brief in the Supreme Court for respondents on review. On the brief in the Court of Appeals was Diane Spies, Portland.

Robert E. Stacey, Jr., Portland, filed a brief amicus curiae on behalf of 1000 Friends of Oregon.

No appearance by Crook County Board of Commissioners.

Before Lent, Chief Justice, and Linde, Peterson, Tanzer, Campbell and Carson, Justices.**

CARSON, J.

---

** Tanzer, J., resigned December 31, 1982.

## CARSON, J.

The sole issue in this case is whether the Department of Land Conservation and Development[1] (Department) has the authority to challenge local government land use decisions before the Land Use Board of Appeals (LUBA), when such decisions were made under previously acknowledged comprehensive plans. The Court of Appeals found no such authority in the Department. We affirm.

## FACTUAL BACKGROUND

Crook County's Comprehensive Plan and Implementing Ordinances were acknowledged by the Land Conservation and Development Commission (Commission) on February 9, 1979. On August 12, 1980, the Crook County Court affirmed the preliminary plat approval given by the county planning commission to Respondent, Ochoco Construction, Inc. (Ochoco), for Cascade Village, a 200-lot rural subdivision on approximately 433 acres.[2] The property is located outside the Urban Growth Boundary of the City of Prineville in an area zoned EFU-3 (exclusive farm use). The county's comprehensive plan and ordinances allow for subdivisions on EFU land as a conditional use where certain standards and criteria are met. In a 34-page decision and order, the Crook County Court analyzed the subdivision proposal and found these criteria satisfied. The court then affirmed the planning commission's approval of the "Cascade Village Tentative Plan," attaching certain conditions that are not relevant to the issue now before us.

The Department appealed the decision of the Crook County Court to LUBA, contending that the approval of the

---

[1] The Department of Land Conservation and Development consists of a seven-member Land Conservation and Development Commission (Commission), a Director and subordinate officers and employes. ORS 197.075.

[2] The Land Conservation and Development Commission was named as the appellant before the Crook County Court, Ochoco Construction Company as the applicant. The appeal from the December 12, 1979, approval by the Crook County Planning Commission (where the Department appeared in writing) was found to be properly filed pursuant to Crook County Ordinance. Apparently no issue was raised concerning the Department's authority to challenge the subdivision approval before the county court, which, apparently incorrectly, has been denominated the "Crook County Board of Commissioners" in the caption of this case upon appeal.

subdivision in the EFU zone violates the Crook County Comprehensive Plan and implementing ordinances on numerous grounds.[3] Ochoco responded that, in the first instance, the Department did not have standing to bring the appeal. Ochoco argued that, once the local government's comprehensive plan and implementing ordinances are officially acknowledged, the Department lacks statutory authority to litigate the propriety of individual local land use decisions and therefore is not a person "whose interests are adversely affected nor a person who was aggrieved by the decision" within the requirements of the rules of procedure of LUBA, Rule F(c)(1).[4]

The Department alleged standing before LUBA by claiming to be the legislatively-designated state agency for ensuring coordinated statewide land conservation and development. The Department contended that the subdivision approval, by violating the Crook County Comprehensive Plan, also adversely affects coordinated statewide land conservation and development. The Department concluded that it is "adversely affected and aggrieved" by the subdivision's injury to the statewide planning scheme that the Department is statutorily charged with enforcing.

LUBA found the Department had alleged sufficient injury to itself and the State of Oregon to grant it standing to challenge the county's decision. It reasoned as follows: Concern over uncoordinated land use is *the* matter of statewide interest which prompted the legislature to enact ORS chapter 197, creating the Department and requiring statewide land use planning (citing ORS 197.005(4)). Achieving coordinated land use is a two-step process involving, first, adoption of comprehensive plans which comply with statewide planning goals and, second, the enforcement of those plans once acknowledged. The state has an equal interest in *both* stages of the

---

[3] Specifically, the Department claimed a violation of the comprehensive plan and zoning ordinance in that (a) the subdivision allows an "urban" use on lands designated in the plan as "rural" and zoned EFU; (b) the county failed to adequately consider the agricultural policy set forth in the plan and in ORS 215.213(3); and (c) the county failed to properly address the requirements for allowing development within an EFU zone.

[4] This procedural rule concerns the required contents of a petitioner's brief before LUBA and specifically requires allegations of fact which would qualify petitioner for standing under Oregon Laws 1979, chapter 772, section 4.

process.[5] LUBA concluded that the Department, established to promote coordinated statewide land conservation and development, is a "proper representative of the state to protect the state's financial as well as policy interest" and that "[c]ertainly, [the Department] must have implied if not express authority to protect the state interest." *DLCD v. Crook County Board of Comm.,* LUBA No. 80-031, 4 (February 17, 1981).[6]

Ochoco appealed LUBA's order, claiming, *inter alia,* that (1) the Department has no statutory authority to represent itself or the State of Oregon in this action before LUBA; and (2) notwithstanding authority to sue, the Department did not allege facts sufficient to demonstrate aggrievement as a result of the land use decision of Crook County, and therefore did not have standing to appeal under Oregon Laws 1979, chapter 772, section 4(3).

The Court of Appeals determined that the Department did not have standing and reversed. After reviewing the organic legislation, the court concluded that the Department had no statutory authority to contest local government land use decisions made *after* the Department had officially acknowledged the local government's comprehensive plan. We accepted the Department's petition for review in light of the potentially significant impact on coordinated land use planning in this state.

An agency is a creature of statute. It has no inherent power, but only such power and authority as has been conferred upon it by its organic legislation. *Ore. Newspaper Pub. v. Peterson,* 244 Or 116, 415 P2d 21 (1966); *Board of Medical Examiners v. Buck,* 192 Or 66, 232 P2d 791 (1951); *Gouge v. David,* 185 Or 437, 202 P2d 489 (1949); and *Sunshine Dairy v. Peterson,* 183 Or 305, 193 P2d 543 (1948). This power includes that expressly conferred by statute as well as such implied power as is necessary to carry out the power expressly granted. *Warren v. Marion County,* 222 Or 307, 353 P2d 257 (1960);

---

[5] LUBA found this interest supported in part by the large expenditures of state money in the form of planning assistance grants to aid in the preparation, adoption and acknowledgment of local comprehensive plans.

[6] LUBA went on to find the Crook County Court's approval of the "Cascade Village Tentative Plan" invalid for failure to address many of the relevant policies set forth in its comprehensive plan.

*Board of Medical Examiners v. Buck, supra.* Stated somewhat differently, a statute which creates an administrative agency and invests it with its power is likewise the measure of its power. *Gouge v. David, supra.* We turn, therefore, to the statutory scheme which created the Department.

## STATUTORY SCHEME[7]

Chapter 197, Oregon Revised Statutes, contains the legislative mandate for comprehensive land use planning coordination in Oregon. As set forth in ORS 197.005,[8] the legislative concerns necessitating statewide planning were that the uncoordinated use of lands within the state threatens its environment, and the health, safety and general welfare of its people. This threat was found to require establishment of a statewide review process whereby local land conservation and development plans are reviewed for compliance with statewide planning goals. Thus, to assure the "highest possible level of liveability," all state and local governing bodies must adopt comprehensive plans which are then to be used as the basis and

---

[7] This appeal is governed by the laws in effect in November 1980, and therefore all statutory provisions cited herein refer to Oregon Laws 1979 unless otherwise designated.

[8] ORS 197.005 (amended, Or Laws 1981, ch 748) states in full:

"The Legislative Assembly finds that:

"(1) Uncoordinated use of lands within this state threaten the orderly development, the environment of this state and the health, safety, order, convenience, prosperity and welfare of the people of this state.

"(2) To promote coordinated administration of land uses consistent with comprehensive plans adopted throughout the state, it is necessary to establish a process for the review of state agency, city, county and special district land conservation and development plans for compliance with state-wide planning goals.

"(3) Except as otherwise provided in subsection (4) of this section, cities and counties should remain as the agencies to consider, promote and manage the local aspects of land conservation and development for the best interests of the people within their jurisdictions.

"(4) The promotion of coordinated state-wide land conservation and development requires the creation of a state-wide planning agency to prescribe planning goals and objectives to be applied by state agencies, cities, counties and special districts throughout the state.

"(5) The impact of proposed development projects, constituting activities of state-wide significance upon the public health, safety and welfare, requires a system of permits reviewed by a state-wide agency to carry out state regulations prescribed for application for activities of state-wide significance throughout this state."

measure for their future implementing rules, regulations, and actions. ORS 197.010.[9]

The Department of Land Conservation and Development, consisting of a seven-member Commission and a Director, is established by ORS 197.075. The Commission is the statewide planning agency charged with, *inter alia,* establishing statewide planning goals, preparing statewide planning guidelines and reviewing state and local comprehensive plans for conformance with the statewide planning goals. ORS 197.040. The powers of the Commission are listed in ORS 197.045:

"The commission may:

"(1)   Apply for and receive moneys from the Federal Government and from this state or any of its agencies or departments.

"(2)   Contract with any public agency for the performance of services or the exchange of employes or services by one to the other necessary in carrying out ORS 197.005 to 197.430 and 469.350.

"(3)   Contract for the services of and consultation with professional persons or organizations, not otherwise available through federal, state and local governmental agencies, in carrying out its duties under ORS 197.005 to 197.430 and 469.350.

"(4)   Perform other functions required to carry out ORS 197.005 to 197.430 and 469.350.

---

[9] ORS 197.010 (amended, Or Laws 1981, ch 748) states in full:

"The Legislative Assembly declares that, in order to assure the highest possible level of liveability in Oregon, it is necessary to provide for properly prepared and coordinated comprehensive plans for cities and counties, regional areas and the state as a whole. These comprehensive plans:

"(1) Must be adopted by the appropriate governing body at the local and state levels;

"(2) Are expressions of public policy in the form of policy statements, generalized maps and standards and guidelines;

"(3) Shall be the basis for more specific rules, regulations and ordinances which implement the policies expressed through the comprehensive plans;

"(4) Shall be prepared to assure that all public actions are consistent and coordinated with the policies expressed through the comprehensive plans; and

"(5) Shall be regularly reviewed and, if necessary, revised to keep them consistent with the changing needs and desires of the public they are designed to serve."

"(5) Assist in development and preparation of model zoning, subdivision and other ordinances and regulations to guide state agencies, cities, counties and special districts in implementing state-wide planning goals."

The Director is appointed by the Commission and serves as the administrative head of the Department. In addition, he or she is required by ORS 197.090 to:

"* * * * *

"(2) Coordinate the activities of the department in its land conservation and development functions with such functions of federal agencies, other state agencies, cities, counties and special districts.

"(3) Appoint, reappoint, assign and reassign all subordinate officers and employes of the department, prescribe their duties and fix their compensation, subject to the State Merit System Law.

"(4) Represent this state before any agency of this state, any other state or the United States with respect to land conservation and development within this state.

"(5) Provide clerical and other necessary support services for the Land Use Board of Appeals."

The responsibilities of cities and counties for coordinated land use planning, as delineated in ORS 197.175, includes the preparation and adoption of comprehensive plans and implementing regulations and ordinances which are consistent with the statewide planning goals established by the Commission. ORS 197.225 through 197.245 establish the steps which the Department and Commission must follow in the preparation and adoption of statewide planning goals and guidelines. All comprehensive plans and "any zoning, subdivision and other ordinances and regulations adopted by a city or county to carry out such plans" must be in conformity with the statewide planning goals within one year from the Commission's approval of such goals. ORS 197.250.

Upon request of a city or county, the Commission will review their comprehensive plans and implementing ordinances for compliance with the statewide goals under the provisions of ORS 197.251. A compliance acknowledgment, if granted by the Commission, constitutes formal recognition that the comprehensive plan and implementing ordinances are in compliance with the statewide planning goals. Thereafter,

with certain exceptions, the statewide planning goals apply to land conservation and development actions, in the language of ORS 197.275(2),[10] "only through the acknowledged comprehensive plan and implementing ordinances."[11]

The Commission also has certain specified powers to enforce the statewide planning goals. By issuing an order to a city, county, state agency or special district, the Commission can require, under ORS 197.320(1), the taking of necessary action whenever the Commission has good cause to believe:

"(a)    A comprehensive plan, or zoning, subdivision or other ordinance or regulation adopted by a city, county not on a compliance schedule is not in conformity with the statewide planning goals by the date set in ORS 197.250 for such conformity; or

"(b)    A plan, program or regulation affecting land use adopted by a state agency or special district is not in conformity with the state-wide planning goals by the date set in ORS 197.250 for such conformity; or

"(c)    A city or county is not making satisfactory progress toward performance of its compliance schedule; or

"(d)    A state agency is not making satisfactory progress in carrying out its coordination agreement or the requirements of ORS 197.180; or

"(e)    A city or county has no comprehensive plan, or zoning, subdivision or other ordinance or regulation and is not on

---

[10] We note that ORS 197.275 was repealed by Oregon Laws 1981, chapter 748. But, we also note that the 1981 Legislature amended ORS 197.175(2), concerning planning responsibilities of cities and counties, to include the following duty:

"Pursuant to ORS 197.005 to 197.430 and 197.605 to 197.650, each city and county in this state shall:

"* * * * *

"(d) *If its comprehensive plan and land use regulations have been acknowledged by the commission, make land use decisions in compliance with the acknowledged plan and land use regulations.*" (Emphasis added.)

In addition, the 1981 Legislature established a new provision requiring periodic review by the Commission of *acknowledged* comprehensive plans and land use regulations to ensure they are in compliance with statewide goals in light of subsequent changes in circumstances. ORS 197.640.

[11] *In addition,* ORS 197.265 provides for potential reimbursement to the city or county by the Commission for court costs and reasonable attorney fees incurred in defending certain suits or actions brought to challenge plans and ordinances which are in compliance with statewide planning goals. "Suit or action" includes a proceeding brought before LUBA under Oregon Laws 1979, chapter 772, sections 4 to 6.

a compliance schedule directed to developing such plans, ordinances or regulations."

The Commission may institute action in circuit court to enforce compliance with the provisions of any order it issues under this section. ORS 197.320(5).

In addition, certain specified activities may be designated by the Commission, under ORS 197.400, as activities of statewide significance and, under ORS 197.405, the Commission may recommend to the legislature further activities or geographical areas of critical state concern. Once an activity or area is properly designated, any proposed project constituting such activity, or any use regulated by the designation, requires a planning and siting permit from the Department. The Department is granted specific enforcement powers for alleged permit violations under ORS 197.430.

In 1979 the Oregon Legislature, striving for consistent and efficient resolution of disputes concerning land use decisions, created the Land Use Board of Appeals (LUBA). The enabling legislation, Oregon Laws 1979, chapter 197, sections 1 to 6a and chapter 772, sections 28 and 29, was added to and made a part of ORS chapter 197. Subject to judicial review of their decisions, LUBA was granted exclusive jurisdiction to review "any land use decision of a city, county or special district governing body or a state agency."[12] Or Laws 1979, ch 772, § 4. To commence review of a land use decision by LUBA, the filing of a notice of intent to appeal is required. Section 4(2) and (3) designates who may appeal a land use decision:

---

[12]

"Land use decision" means:

"(a) A final decision or determination made by a city, county or special district governing body that concerns the adoption, amendment or application of:

"(A) The state-wide planning goals;

"(B) A comprehensive plan provision; or

"(C) A zoning, subdivision or other ordinance that implements a comprehensive plan; or

"(b) A final decision or determination of a state agency other than the Land Conservation and Development Commission, with respect to which the agency is required to apply the state-wide plannng goals."

Or Laws 1979, ch 772, § 3(1).

"(2) Except as provided in subsection (3) of this section, any person whose interests are adversely affected or who is aggrieved by a land use decision and who has filed a notice of intent to appeal as provided in subsection (4) of this section may petition the board for review of that decision or may, within a reasonable time after a petition for review of that decision has been filed with the board, intervene in and be made a party to any review proceeding pending before the board.

"(3) Any person who has filed a notice of intent to appeal as provided in subsection (4) of this section may petition the board for review of a quasi-judicial land use decision if the person:

"(a) Appeared before the city, county or special district governing body or state agency orally or in writing; and

"(b) Was a person entitled as of right to notice and hearing prior to the decision to be reviewed or was a person whose interests are adversely affected or who was aggrieved by the decision."

"Person" is defined in section 3(2) as "any individual, partnership, corporation, association, governmental subdivision or agency or public or private organization of any kind."

It is against the foregoing statutory provisions that we must test the Department's claim of authority to challenge post-acknowledgment local land use decisions before LUBA.

## THE DEPARTMENT'S STANDING TO APPEAL TO LUBA:

The decision by the Crook County Court approving the tentative subdivision plan was properly characterized by the parties as a quasi-judicial decision, that is, "a decision limited in time and space to specific facts and named addressees rather than one promulgating a general rule addressed to an open class of persons and future events." *Benton County v. Friends of Benton County*, 294 Or 79, 88, 653 P2d 1249 (1982). As such, the "person" who has filed a notice of intent to appeal with LUBA must have appeared, either orally or in writing, before the governing body *and* either be a "person" who was entitled as of right to notice and hearing prior to the decision, one whose interests are "adversely affected" or one who was "aggrieved" by the decision. Or Laws 1979, ch 772, § 4(3). The

definition of "person," as quoted above, clearly contemplates a governmental agency, such as the Department, petitioning LUBA for review of a quasi-judicial decision.

Although three alternative means of qualifying for LUBA review are available to the "person" who appeared before the quasi-judicial decision-maker, the Department here chose to allege before LUBA that it was both "adversely affected *and* aggrieved" by the Crook County Court's decision. Ochoco responded that the Department was neither. LUBA, on the other hand, chose to couch its standing determination in terms of the Department's "interest" in coordinated land use planning which was "adversely affected." *DLCD v. Crook County Board of Comm.*, LUBA No. 80-031 (Feb. 17, 1981). As we determined in *Benton County v. Friends of Benton County, supra*, the two phrases do not have the same meaning. There we set forth illustrations to show how the test for being "aggrieved" might be argued so as to avoid argument over the meaning of "adversely affected." We said, in point of illustration:

> "* * * It might plausibly be argued that public agencies are assigned responsibility for various aspects of public policy but have no 'interests' of their own to be 'adversely affected' by an adverse decision. Again, however, a public agency may claim to be 'aggrieved' by a decision against some public interest for which it has responsibility without debating whether the agency's own interest is 'adversely affected.' * * *."

294 Or at 88. We do not find it necessary to the present determination to further distinguish the meaning of these phrases or to limit the ground upon which LUBA relied in finding the Department had standing.

In the case of an administrative agency, which derives its power solely from its enabling statute, *both* the alleged aggrievement and the alleged interest which is adversely affected must likewise derive from some statutorily defined interest or responsibility. Therefore, absent statutory language which evinces a legislative intent that the agency be responsible for the particular interest decided, there can be neither an agency interest "adversely affected" by the land use decision nor can the agency be "aggrieved" by the decision.

Returning then to the Department's organic statute, it is clear that the legislature did not *expressly* grant the

Department the authority to challenge local land use decisions made after comprehensive plan acknowledgment. Neither did the legislature expressly charge the Department with the responsibility of ensuring that, after plan acknowledgment, all local land use decisions are made in compliance with acknowledged plans. Such an argument was, in fact, not presented. Rather, the Department argues that an examination of its general statutory authority, considered in light of the purpose of ORS chapter 197, compels a construction which grants it the authority it claims. Specifically, the Department relies on ORS 197.045(4) which grants power to the Commission to "[p]erform other functions required to carry out ORS 197.005 to 197.430 and 469.350." We do not agree that such significant power is required in order to carry out the purpose of ORS chapter 197.

Coordinated statewide land use planning, as noted by LUBA, logically encompasses two equally important stages: (1) the formulation of statewide land use goals and the adoption of local comprehensive plans and implementing ordinances in compliance with these statewide goals, *i.e.,* the planning stage, and (2) local land use decisions made thereafter which are in accord with the acknowledged comprehensive plans, *i.e.,* the enforcement stage. While the general findings and policies set forth in the preamble to ORS chapter 197 arguably can be construed as contemplating both stages as being a declared state interest, we find no provision within the chapter itself which delegates or necessarily implies any responsibility to the Department concerning the latter enforcement stage once the local plan is acknowledged. In fact, such responsibility is conspicuously absent in light of the breadth of responsibility with which the Department expressly is charged during the planning stage. Furthermore, none of the responsibilities expressly delegated to the Department are in any way frustrated by its inability to challenge land use decisions made after comprehensive plan acknowledgment.

As established in the statutory provisions cited above, the Department is the sole planning agency designated to prepare and adopt statewide planning goals and guidelines for use by other "agencies, cities, counties and special districts in preparing, adopting, revising and implementing existing and future comprehensive plans." ORS 197.225. Similarly, once the goals are adopted, and upon request by a city or county, the

Commission has significant discretion in granting "compliance acknowledgment" to the submitted comprehensive plans. ORS 197.251. Rather than granting formal recognition of compliance to a submitted plan, the Commission may grant a planning extension to the city or county with an accompanying "compliance schedule" listing the tasks and time schedule necessary to bring the comprehensive plan into conformity with the statewide goals. *Id.* But, once the Commission acknowledges a comprehensive plan and implementing ordinances as being in compliance with the statewide goals, the goals apply to future land use decisions, with certain specified exceptions, only *through* the acknowledged plan and implementing ordinances. ORS 197.275(2).[13] In other words, local land use actions taken *after* acknowledgment are tested for compliance against the acknowledged plan and ordinances and not the statewide goals. *Byrd v. Stringer,* 295 Or 311, 316, 666 P2d 1332 (1983).

The Commission also specifically is granted broad enforcement powers to ensure compliance with the statewide goals under the provisions of ORS 197.320. An order may be issued by the Commission where there is good cause to believe certain land use planning functions are not being satisfactorily completed and this order may be enforced in circuit court proceedings. *Each* of the designated areas which allow the Commission's imposition of an enforceable order under this section involve the *pre-acknowledgment* or planning stage of land use planning.[14]

The foregoing provisions indicate a legislative intent to grant pervasive powers to the Department in the area of

---

[13] *See* n 10, *supra.*

[14] We note that the 1981 Legislature amended ORS 197.320 to allow the Department to issue a compliance order directing the action necessary to reach goal compliance when:

"(f) A local government has engaged in a *pattern or practice* of decision making that violates an acknowledged comprehensive plan or land use regulation." (Emphasis added.)

We think this specific grant of power to the Department to review and act upon local land use decisions "which follow a *pattern or practice*" of plan violation after plan acknowledgment by itself issuing a compliance order, further supports our conclusion that the 1979 Legislature did *not* intend impliedly to grant the power claimed here to challenge individual land use decisions before LUBA.

coordinated statewide land use planning. With the sole exception of those activities properly designated as being of statewide significance or of critical concern in which the Department performs a regulatory role,[15] these powers involve only the planning stage of the coordination process. Once the Department has officially acknowledged a local comprehensive plan as being in compliance with statewide goals, its role in the coordinated process, as carefully delineated in the statutory provisions, comes to an abrupt halt. Had the legislature intended to charge the Department with the additional responsibility of ensuring that individual land use decisions comply with the local acknowledged plan, the legislature would have delineated the responsibility as clearly as it did the above-listed provisions.

The Department points to ORS 197.090(4), designating the Director to represent this state before "any agency of this state, any other state or the United States with respect to land conservation and development within this state," as granting authority to contest local land use decisions before LUBA. This provision, enacted in 1973 when the Department was first established and long before the creation of LUBA, can be explained in terms of general powers granted the Department[16] and was not intended for the very specific purpose of authorizing the Department to contest local decisions of the type present in the instant case. Furthermore, this provision merely designates the Director as the proper person to bring a challenge to LUBA; it does not dispense with or satisfy the standing requirements of chapter 772, section 4. Representing the state in a challenge before LUBA would likewise require either a state aggrievement or an interest adversely affected by the local land use decision. As noted above, while there exists language within the preamble of ORS

---

[15] The legislature did expressly grant certain powers to the Department which involve Departmental supervision of land use actions *whether or not* covered by an acknowledged comprehensive plan. But, these powers are of a regulatory nature and are strictly confined to specifically designated activities of statewide significance and in certain designated areas of critical concern. ORS 197.400 through 197.430.

[16] For example, the Department has the authority to apply for and receive money to contract for services and to coordinate its land conservation and development functions with such functions of other agencies. *See* ORS 197.045 and ORS 197.090.

chapter 197 concerning the state's desire in achieving coordinated land use planning, we do not believe such general language was intended to confer on the Department the power to challenge every local land use decision.

We have uncovered no legislative history which persuades us to reach a contrary conclusion. The Department argues that by virtue of 1981 legislation, creating a process for review of amendments to acknowledged plans or land use regulations or the adoption of new land use regulations, our conclusion will produce an unreasonable result.[17] Under the 1981 post-acknowledgment procedures, appeal of these local amending decisions on the issue of compliance, with certain exceptions, is to the Commission rather than to LUBA. The Director is specified as the one who may file the appeal with the Commission, provided the Department "appeared" before the local decision maker. Because certain "small tract" zoning amendments are exempt from these provisions, and thus are subject to review only by LUBA, the Director, by our decision today, could have standing for purpose of seeking review before the Commission but not when small tract zoning amendments are involved and appeal is to LUBA. We do not find this to be an unreasonable result but rather a conscious legislative choice as to the scope of involvement of a state agency in local land use planning. Furthermore, the choice is consistent with our interpretation of ORS chapter 197. Post-acknowledgment amendments to existing comprehensive plans and new regulations call into play similar Departmental responsibilities as are expressed in the pre-acknowledgment provisions. These again involve the planning stage, namely, a reviewing of the amendments to assure compliance with statewide goals. To exempt zoning amendments on small tracts from a renewed review process by the Department simply signifies legislative line-drawing as to what magnitude of land use amendment warrants additional state review.

The Department, as did LUBA, places considerable emphasis on the state's monetary interest in ensuring that local land use decisions are in accordance with acknowledged plans. Literally thousands of dollars are alleged to have gone to Crook County alone to aid in the preparation and adoption of

---

[17] *See* ORS 197.605 through 197.650, Oregon Laws 1981.

its comprehensive plan. Furthermore, the Department argues that it is unreasonable, considering the state's huge investment in the planning process, to place the onus solely on individual citizens as litigants to protect the state's interest.

While we might agree that such a large investment of state money in the planning process calls for some state involvement in the enforcement stage, we are not a legislative body. Granting authority to the Department to contest post-acknowledgment land use decisions to LUBA rather than relying on individual citizens to bring such appeals would arguably lead to more consistent land use development statewide. Of course, such state involvement in reviewing local governments' land use decisions itself necessitates significant budgetary outlays. It also calls for a substantial state involvement in an area of traditionally local concern.[18] We assume from our reading of ORS chapter 197 that the legislature weighed these and other factors and chose not to designate the Department as the state's "watchdog" of land use decisions made after comprehensive plan acknowledgment.

The Department also argues that our decision will prevent it from "appearing" before local government bodies and thereby interfere with the accomplishment of coordinated statewide planning. We hold only that the Department has not been statutorily charged with responsibility for ensuring that local land use decisions are in compliance with acknowledged comprehensive plans for purposes of achieving the status of a "person" whose interests are "adversely affected" or who is "aggrieved" for review of the decision before LUBA. The Commission is statutorily charged with the duty to "[c]ooperate with the appropriate agencies of the United States, this state and its political subdivisions, any other state, any interstate agency, any person or groups of persons with respect to land conservation and development." ORS 197.040(1)(d). The

---

[18] *See* for example, ORS 197.005, the legislative findings, which state that:

" * * * * *

"(3) *Except as otherwise provided* in sub-section (4) of this section, cities and counties should remain as the agencies to consider, promote and manage the local aspects of land conservation and development for the best interests of the people within their jurisdictions.

" * * * * *." (Emphasis added.)

question of who may be admitted or excluded in a local government proceeding will be governed by the applicable local procedural rules, not by our holding. *Cf. Benton County v. Friends of Benton County, supra.*

In reaching our conclusion that the Department does not have the statutory authority to challenge local land use decisions to LUBA made after comprehensive plan acknowledgment, we are reassured by the knowledge that if we have too narrowly construed the powers which the legislature intended to implicitly bestow upon the Department, the legislature can act to make explicit these powers.[19] But, to reach the opposite conclusion based on the provisions of ORS chapter 197 would require a usurpation of the legislative function.

The Court of Appeals is affirmed.

---

[19] We note that, in fact, the 1983 Legislature recently passed, and sent to the Governor for approval, HB 2295, which substantially amends ORS chapter 197. In particular, to ORS 197.090 is added the following language:

"Subject to local government requirements and the provisions of sections 31 to 34 of this 1983 Act, the director may participate in and seek review of a land use decision involving the goals, acknowledged comprehensive plan or land use regulation or other matter within the statutory authority of the department or commission under ORS 197.005 to 197.430 and 197.610 to 197.650. The director shall report to the commission on each case in which the department participates and on the positions taken by the director in each case."

House Bill 2295, Section 2, 1983 Regular Session.