Argued and submitted September 9, 1982, petition for review dismissed April 17, 1984

VALLEY & SILETZ RAILROAD et al,
*Respondents on Review,*

*v.*

LAUDAHL et al,
*Respondents,*
LAND USE BOARD OF APPEALS,
*Petitioner on Review.*

(No. 81-022, CA A21462, SC 28675)

681 P2d 109

William F. Gary, Solicitor General, Salem, argued the cause for petitioner on review. With him on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and James E. Mountain, Jr., Deputy Solicitor General, Salem.

Scott McArthur, Monmouth, argued the cause and filed a brief in the Supreme Court for respondents on review. With him on the briefs in the Court of Appeals was McArthur & Jennings, P.C., Monmouth.

Kenneth E. Shetterly, Dallas, filed a brief in the Court of Appeals for respondents. With him on the brief was Hayter, Shetterly & Irick, Dallas.

Peter L. Barnhisel, Corvallis, filed a brief amicus curiae in behalf of Stanley Starr. With him on the brief was Fenner, Barnhisel, Morris & Willis, Corvallis.

Richard P. Benner, Portland, filed a brief amicus curiae in behalf of Clif Kenagy and Friends of Benton County, Inc.

CARSON, J.

**CARSON, J.**

The Land Use Board of Appeals (LUBA) petitions for review of *Valley & Siletz Railroad v. Laudahl,* 56 Or App 487, 642 P2d 337 (1982), which reversed LUBA's decision reported at 3 Or LUBA 101 (1981). LUBA did not appear before the Court of Appeals, and none of the parties who appeared before that court petitioned for review. We allowed review, 293 Or 340, 648 P2d 852 (1982), subject to future consideration of whether LUBA is permitted to petition for review. On this threshold question we hold, for the reasons which follow, that LUBA is not a party to the appeal and therefore is not entitled to petition for review.

The rules governing judicial review of administrative decisions are derived from the applicable statutes, not from common law. *Benton County v. Friends of Benton County,* 294 Or 79, 81-84, 653 P2d 1249 (1982). Any "party" before LUBA may seek judicial review of its opinion to the Court of Appeals. Or Laws 1979, ch 772, § 6a(1).[1] Similarly, any "party aggrieved" before the Court of Appeals may petition for review in this court. ORS 2.520.[2]

LUBA first argues that ORS 2.520 is a permissive statute and does not limit this court's ability to consider a petition for review from other than aggrieved parties. LUBA asserts that regardless of whether it is a party, we should allow review. LUBA then contends that the statutory term "party aggrieved" should be interpreted to include an administrative agency seeking judicial review of a reversal of its order where issues of public importance, such as land use regulation, are involved. Both of LUBA's arguments in support of its standing stress the desirability for agencies to be able to seek review of reversals of their orders in order to protect the "public interest" in the area of responsibility with which the agency is

---

[1] 1979 Or Laws, ch 772, § 6a(1):

"Any party to a proceeding before the Land Use Board of Appeals under sections 4 to 6 of this 1979 Act, may seek judicial review of a final order issued in those proceedings."

[2] In 1982 when LUBA petitioned this court for review, ORS 2.520 provided:

"Any party aggrieved by a decision of the Court of Appeals may petition the Supreme Court for review within 30 days after the date of the decision in such manner as provided by rules of the Supreme Court."

charged. We address this reason LUBA advances in support of its standing.

The litigants inform us that courts elsewhere are divided as to whether a zoning board of appeals or similar body has standing to appeal reversals of its decisions. Some courts allow standing on the theory that the board represents public interests that reach beyond those of the immediate parties. *Rommell v. Walsh,* 127 Conn 16, 15 A2d 6, 9 (1940); *Board of Adjustment of City of Fort Worth v. Stovall,* 147 Tex 366, 216 SW2d 171, 173 (1949). In *Matunuck Beach Hotel, Inc. v. Sheldon,* 121 RI 386, 399 A2d 489 (1979), the court allowed local liquor license commissioners to challenge a decision of the state liquor control administrator which reversed the commissioners' denial of a liquor license. The court interpreted the standing language of the state Administrative Procedures Act, "party in interest * * * aggrieved," to include the local board of commissioners because they were representing the public interest. The court stated: "[T]he question of standing in the public interest area, as in other areas, should not center on the quantum of the public's interest, but on whether an unfavorable outcome of the controversy will adversely affect the public interest." 121 RI at 395, 399 A2d at 494.

Other courts deny standing because, even though the agency may be entrusted with protecting the public interest in a particular area, allowing the agency standing to appeal casts suspicion on the impartiality of the board's adjudication. In *Speck v. Zoning Board of Appeals,* 89 Ill 2d 482, 433 NE2d 685 (1982), the court analyzed it this way:

> "There is no question that the Board is entrusted with the duty of protecting the public health, safety and welfare. However, the Board's obligation to the public is fully discharged when it conducts a hearing and, with due consideration to the public interest, determines the propriety of granting or denying a variation. * * * Its responsibility to protect the public interest does not authorize the Board to act as a representative of the public for the purpose of vindicating *its own decision on appeal. It is apparent that, in assuming the role of advocate, the Board's required duty of impartiality is compromised."* (Citations omitted.) 89 Ill 2d at 486, 433 NE2d at 687.

*See also, Howard County v. Mangione,* 47 Md App 350, 423 A2d 263 (1980). In *Inhabitants of Town of Boothbay, etc. v. Russell,* 410 A2d 554, 560 (Me 1980), the court rejected the argument that the zoning board of appeal had standing. The court could find no legislative authorization for the board to perform an enforcement function in addition to its adjudicative function with regard to zoning regulations. *See also, Hassell v. Zoning Board of Review,* 108 RI 349, 275 A2d 646, 648-49 (1971).

In *Benton County v. Friends of Benton County, supra,* we recognized that the aggrievement necessary for standing before an agency tribunal, in that case LUBA, might extend to public agencies charged with public policy making. We suggested that such an agency might be "aggrieved" by a decision against some public interest for which it has responsibility. 294 Or at 88. In *Ochoco Const. v. DLCD,* 295 Or 422, 667 P2d 499 (1983), we considered whether an agency, in that case the Department of Land Conservation and Development (Department), was "aggrieved" or "adversely affected" as those terms are used in the statutes regulating standing before LUBA, Oregon Laws 1979, chapter 772, section 4(3).

We stated:

"In the case of an administrative agency, which derives its power solely from its enabling statute, *both* the alleged aggrievement and the alleged interest which is adversely affected must likewise derive from some statutorily defined interest or responsibility. Therefore, absent statutory language which evinces a legislative intent that the agency be responsible for the particular interest decided, there can be neither an agency interest 'adversely affected' by the land use decision nor can the agency be 'aggrieved' by the decision." (Emphasis in original.) 295 Or at 433-34.

The Department is not an adjudicative body. The Department, in conjunction with the Land Conservation and Development Commission (Commission) has policy making and limited enforcement functions. For this reason *Ochoco* is not directly applicable to the instant question of a tribunal's standing. Certain considerations raised in *Ochoco* are nonetheless worth mentioning.

First, there is, of course, the general requirement that the decision the agency seeks to challenge must affect the area

of regulatory interest for which the agency has responsibility. In *Ochoco* we recognized that the (Department) in conjunction with the Commission was among the agencies charged with statewide land use planning responsibilities. However, the Department's enabling legislation during the time pertinent to the case restricted its authority to the pre-acknowledgment, or planning, stage of land use planning.[3] The requirement is readily met in this case, however, because LUBA has responsibilities in both the pre- and post- acknowledgment phase of land use regulation.

Second, the question whether the legislature intended the agency to appear as a party on behalf of the public interest for which the agency has responsibility is answered by examining the functions the legislature assigned to the agency in its enabling legislation. In *Ochoco,* for example, there was no question that the Department, by virtue of its statutorily assigned tasks, would have had standing to appear as an advocate in support of its own policies had its responsibilities extended to post-acknowledgment regulation.

In this case it is LUBA seeking to appear before this court. It claims aggrievement by virtue of its responsibilities in land use regulation. We must examine LUBA's role in the statutory scheme of statewide land use regulation. A brief review of Oregon land use legislation over the past decade may be helpful.

Prior to 1973, review of land use decisions made at the local government level took place in the circuit court. In 1973, the legislature created a statewide body, the Commission, to review certain land use decisions, those involving "a comprehensive plan provision or any zoning, subdivision or other ordinance or regulation alleged to be in violation of statewide planning goals * * *." ORS 197.300(1)(d) (1973). The Commission had authority to review a broad range of land use decisions if the petitioner was a state agency or local government, but the Commission's jurisdiction was narrow if

---

[3] The Department's authority has since been expanded by amendments in 1981 to include responsibility for post-acknowledgment, or enforcement, tasks. ORS 197.605 through 197.650 (1981). In addition, the Department, through its director, now has specific authority to appear as a litigant before LUBA by amendment in 1983. ORS 197.090 (1983).

the petition was brought by private individuals or groups. Compare ORS 197.300(1)(a)-(c) (1973) with ORS 197.300(1)(d) (1973). The circuit courts retained review power over all land use decisions not within the purview of the Commission's statutory authority. "[W]hile both governmental agencies and private individuals or groups may contest 'a comprehensive plan provision or any zoning, subdivision or other ordinance or regulation,' *only* the governmental agencies can contest a 'land conservation and development *action'.*" (Emphasis in original.) Parker and Schwab, *Forecast: Cloudy But Clearing — Land Use Remedies in Oregon,* 15 Will L Rev 245, 253-54 (1979). The definitional struggle between "action" and "plan provisions, ordinances and regulations" to determine the Commission's jurisdiction ensued. *Id* at 254-55.

This system of split jurisdiction between the Commission and the circuit courts proved unsuccessful. Litigants were confused about the proper forum in which to seek review. The scope of judicial review varied with the forum from which appeal was sought. In addition, both the circuit court and the Commission were interpreting land use decisions for compliance with the Commission's statewide planning goals, frustrating a consistent application of the goals. *See* Hickam, *The Land Use Board of Appeals,* 16 Will L Rev 323 (1979).[4]

---

[4] Lee Johnson, the Governor's representative and principal architect of LUBA, described the "procedural nightmare" that existed before LUBA was created:

"The solutions proposed in the bill are to a degree novel and complex. The reasons for the complexity are embodied in the land use planning process. In the first place, we are dealing with a process which contains elements of legislative policy-making by politically accountable bodies, and is also administrative and quasi-judicial. In *Fasano [v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973)] the Oregon Supreme Court held that many land use decisions which heretofore were deemed to be legislative are now quasi-judicial. The Court has left unanswered where the line between legislative and quasi-judicial lies. Furthermore, even though the Court has delineated certain types of decisions as quasi-judicial, it cannot be ignored that such decisions also appropriately retain elements of political policy making. The simplest zone change usually involves the weighing of competing public concern.

"Land use planning is further complicated by the multilayered decision process. First, there is the decision at the local level. Here, the process is often two-tiered involving the city or county planning commissions and the respective governing body. In the metropolitan area, we have another layer in the Metropolitan Service District. Coupled with these two elements, LCDC plays a major role in the land use decision process. Cities, counties and other governmental bodies can appeal any local land use decision to LCDC on the grounds that it is inconsistent with LCDC goals. Private parties, however, can only appeal certain decisions to LCDC. For example, a private party can appeal a zone change but not a subdivision approval.

LUBA was created in 1979 with the express policy that "time is of the essence in reaching final decisions in matters involving land use and that those decisions be made consistently with sound principles governing judicial review." Or Laws 1979, ch 772, § 1a. In this way, appeal of land use decisions was simplified.[5] As LUBA describes its role in this petition for review, it is "in effect the successor to the circuit court's land use jurisdiction in writ of review proceedings."

LUBA's organic act is Oregon Laws 1979, chapter 772, as amended by Oregon Laws 1981, chapter 748.[6] LUBA's

---

"Superimposed over this elaborate planning agency structure is judicial review. The most common form is the writ of review to the circuit court. The scope of writ is generally limited to a review of the record, but evidence can be taken with regard to such questions as standing, adequacy of the record and ex parte contacts. Writ of review is the appropriate remedy for raising the *Fasano* issues: *i.e.,* was there adequate notice, hearing, findings of fact and law, and did the local governing body adequately consider the public interest and whether there is other available land. The writ can also be used to attack a local land use decision on the grounds it violates LCDC goals. Thus, in effect the circuit courts have concurrent jurisdiction with LCDC over LCDC goal issues. Indeed, in some cases the circuit court has exclusive jurisdiction over LCDC goal questions because of the limited right of appeal to LCDC afforded private parties under ORS 197.300.

"The circuit court decision in a writ of review case is subject to appeal to the Court of Appeals with discretionary review by the Supreme Court. It should be noted that since the scope of the review is on the record, the circuit court's findings generally are not given weight by the appellate courts.

"If the local land use decision is legislative, then the appropriate remedy is by declaratory judgment. This interjects another complexity because often it is difficult for the litigants to determine whether a decision is legislative or quasi-judicial. In some instances, the party seeking judicial review files both a writ of review and a declaratory judgment action.

"Finally, there is one other avenue of judicial review available. If a party appeals to LCDC, then the Commission's decision is subject to appeal under the Administrative Procedures Act, ORS chapter 183.

"This procedural nightmare is further complicated by the fact that *Fasano* and LCDC goal issues often overlap. To illustrate, failure to provide adequate notice or hearing may violate *Fasano*, and likewise would be a violation of Goal 2 of the LCDC goals." House Committee on Judiciary, June 18, 1979, Exhibit A, SB 435 at 1-3.

[5] A legislative sponsor of the establishment of LUBA, Senator Ragsdale, stated that formation of LUBA would "cut down the potential for forum shopping in land use appeals. The concern was also to cut down the opportunity to divide the question and go into multiple forums." Minutes, House Committee on Judiciary 4, June 18, 1979. Similarly, Lee Johnson testified that the essence of LUBA was to consolidate the then-expiring procedural complexities into a single administrative proceeding. *Id* at 8.

[6] In Oregon Laws 1979 and 1981, the act is printed preceding ORS Chapter 197. These provisions now appear at ORS 197.805 through 197.850 (1983).

function is to "conduct review proceedings upon petitions filed in the manner prescribed * * *." Or Laws 1979, ch 772, § 2a(1). With the exception of rules governing the conduct of its own proceedings, § 2a(4), LUBA has no rule-making authority. Unlike the Commission, which is charged with authority to "[a]dopt by rule * * * or by goal * * * any state-wide land use policies that it considers necessary to carry out" the land use statutes, ORS 197.040(c), LUBA has not been delegated a legislative function, nor is LUBA delegated an enforcement function. LUBA's task is strictly adjudicatory.

Some adjudicative bodies may have standing by virtue of their active participation as litigants or initiators of their own proceedings. A professional licensing board presents one example of an adjudicative body that initiates proceedings to enforce particular policies, usually in the form of standards of conduct by which its membership is bound. Such a board might be "aggrieved" within the meaning of ORS 2.520 by a reversal of its decision on appeal. Other bodies, even though they act by quasi-judicial procedures, may be the primary policy makers in their area of regulatory interest and likewise may have standing to seek review when their decisions are reversed by the Court of Appeals. Tribunals with rule-making authority in addition to adjudicative responsibilities provide an example.[7]

We have seen that LUBA has been delegated neither a rule-making function nor the initiation of enforcement. Also, LUBA is not the primary policy maker with regard to land use regulation. When a pre-acknowledgment land use decision is challenged and the petition for review to LUBA raised issues of goals violations, LUBA "review[s] the decision," Or Laws 1979, ch 772, § 5(1), and then "prepare[s] a recommendation to the commission" which includes "a general summary of the evidence contained in the record and proposed findings of fact and conclusions of law concerning

---

[7] An agency may fulfill its policy making responsibilities either through rule-making or adjudication. The fact that a particular agency has no express rule-making authority may not, in all cases, foreclose a conclusion that the agency has standing to advocate its policies on appeal, if the agency's statutory directives are broad and the legislature has clearly assigned the agency the task of developing, as well as applying, policy.

the allegations of violation of the state-wide planning goals." § 6(1). The Commission "issue[s] its determination on the recommendation of the board and return[s] the determination to the board for inclusion in the board's order * * *." § 6(3). Thus, when an interpretation of the goals in a particular fact situation is called for, LUBA has input but must defer to the determination of the Commission.[8]

LUBA's role in policy development is no greater than that of any quasi-judicial body which applies the law to factual settings consistently and over a period of time in its area of specialty. Certainly, land use regulation is a matter of state-wide public interest, but this alone does not render every agency involved in land use regulation, for instance a local planning commission, "aggrieved" when it is dissatisfied with a judicial ruling. The role delegated to the agency apart from its use of quasi-judicial procedures is the controlling consideration. We find no indication in the duties delegated to LUBA that the legislature contemplated that the tribunal would assume the role of advocate. Both enforcement and primary policy making responsibility reside in the Department and the Commission. LUBA's "statutorily defined interest or responsibility," *Ochoco Const. v. DLCD, supra,* 295 Or at 433, lies in impartial, consistent and speedy review of local land use decisions. Having no statutory interest beyond this, LUBA cannot be aggrieved by a reversal of its order on appeal.

We hold that LUBA is not aggrieved within the meaning of ORS 2.520. For this reason we do not reach the merits. The petition for review is dismissed.

---

[8] LUBA's review of post-acknowledgment land use decisions has been expanded. The most recent amendments assign to LUBA authority to decide issues of goal compliance without participation from the Commission when local governments amend acknowledged plans or ordinances or enact new ordinances. ORS 197.620, 197.835 (1983).