No. 646          July 23, 2025          41

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

SHAYNE M. JACOBS,
*Petitioner,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A181782

Argued and submitted March 10, 2025.

Francis C. Gieringer, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Erica L. Herb, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

Reversed and remanded for proceedings consistent with this opinion.

**KAMINS, J.**

Petitioner seeks judicial review of a final order (Board Action Form (BAF) 12) of the Board of Parole and Post-Prison Supervision (the board) that denied petitioner release after his juvenile hearing under ORS 144.397. Petitioner, an adult in custody with a life sentence for crimes committed when he was fifteen years old, was granted clemency by Governor Kate Brown in the form of a sentence commutation. That commutation gave petitioner a juvenile hearing that he otherwise would not have received. Petitioner raises three assignments of error: the board erred when it (1) determined that petitioner had not demonstrated his maturity or rehabilitation; (2) forced petitioner to choose between an exit interview and a juvenile hearing; and (3) deferred petitioner's next juvenile hearing for four years.

Petitioner's first assignment rests on three distinct prongs: (1) the board's conclusion that petitioner's "family and community circumstances" were not probative of the person and the offense was not supported by substantial evidence and substantial reason; (2) the board exceeded its authority by adopting an administrative rule that the board then used in its determination, in part, to reach its conclusion, OAR 255-033-0030(5)(k); and (3) the board's order, on the whole, was not supported by substantial evidence.

With regard to petitioner's second assignment, we agree that it was error to require petitioner to choose between a previously scheduled exit interview and the juvenile hearing granted as part of his commutation, but otherwise affirm.

## I.  JUVENILE HEARINGS

To place our discussion of the facts in their appropriate context, we begin with a brief overview of juvenile hearings[1] under ORS 144.397 and the relevant board's rule implementing that statute. Since 2019, all persons serving a prison sentence who were convicted of an offense committed

---

[1] We use the term "juvenile hearing" here to refer to the hearing conducted by the board pursuant to ORS 144.397(3) ("When a person eligible for release on parole or post-prison supervision as described in subsection (1) of this section has served 15 years of imprisonment, the State Board of Parole and Post-Prison Supervision shall hold a hearing.").

prior to turning 18 are eligible for parole after serving 15 years of imprisonment, regardless of any mandatory minimum sentences. ORS 144.397(1) - (2). After a person who was convicted as a juvenile has served 15 years, the board shall hold a juvenile hearing that provides the person "a meaningful opportunity to be released on parole." ORS 144.397(3). During that hearing, the board "shall consider and give substantial weight to the fact that a person under 18 years of age is incapable of the same reasoning and impulse control as an adult and the diminished culpability of minors as compared to that of adults." ORS 144.397(5). The board "shall" also consider the following factors, if relevant:

"(a)   The age and immaturity of the person at the time of the offense[;]

"(b)   Whether and to what extent an adult was involved in the offense[;]

"(c)   The person's family and community circumstances at the time of the offense, including any history of abuse, trauma and involvement in the juvenile dependency system[;]

"(d)   The person's subsequent emotional growth and increased maturity during the person's imprisonment[;]

"(e)   The person's participation in rehabilitative and educational programs while in custody if such programs have been made available to the person and use of self-study for self-improvement[;]

"(f)   A mental health diagnosis[;]

"(g)   Any other mitigating factors or circumstances presented by the person."

*Id.* The board may not consider the age of the person "as an aggravating factor," under any circumstance. ORS 144.397(6).

If, "based on the consideration of the age and immaturity of the person at the time of the offense and the person's behavior thereafter, the person has demonstrated maturity and rehabilitation," the board shall release the person subject to certain procedures. ORS 144.397(7). Finally, the board "may adopt rules to carry out the provisions of" the statute. ORS 144.397(13).

Pursuant to ORS 144.397, the board adopted OAR 255-033-0030, a rule that explains the board's considerations at the juvenile hearing. As relevant to this appeal, the rule allows the board to consider, "among other things," several factors in determining whether the person has demonstrated maturity and rehabilitation:

"(a)   the person's involvement in correctional treatment, medical care, educational, vocational, or other training in the institution which will substantially enhance the person's capacity to lead a law-abiding life when released;

"(b)   the person's institutional employment history;

"(c)   the person's institutional disciplinary conduct;

"(d)   the adequacy of the person's release plan including community support from family, friends, treatment providers, and others in the community; type of residence, neighborhood, or community in which the person plans to live;

"(e)   the person's ability to demonstrate remorse and understanding of the impact the person's crime had on the victims and the community;

"(f)   the person's attitude and evidence of behavioral change;

"(g)   the extent the person takes personal responsibility for their actions;

"(h)   any psychiatrist or psychologist's assessment of the person's current risk of re-offending, risk of harm, and suitability for community supervision;

"(i)   the person understands long-term consequences;

"(j)   the person can delay impulses and identify alternative actions;

"(k)   the degree of premeditation or deviancy involved in the commission of the crime and the ability to understand, address, and mitigate those underlying risk factors;

"(l)   the person, if paroled, would not be a threat to the safety of the victim, the victim's family, or the community and would comply with release conditions; and

"(m)   any other relevant factors."

OAR 255-033-0030(5).

## II.  FACTS

*Crime and initial parole proceedings.* In 1981, petitioner and his codefendant, Jackson, shot and killed M and her six-month-old infant daughter, S, at M's home.[2] Petitioner and Jackson were 15 years old. Petitioner pleaded guilty to murder and felony murder and was sentenced to consecutive life sentences. Although petitioner was initially denied the possibility of parole, the board in 2005 granted petitioner's request to reconsider that decision and, after a hearing, set petitioner's projected parole release date for 2009. The board deferred petitioner's release date following several exit interviews in 2008, 2010, 2015, and 2020 based on its finding that petitioner suffered from a present severe emotional disturbance (PSED). Following the most recent hearing in December 2020, the board deferred petitioner's release date to June 2023 and scheduled an exit interview for December 2022.

*Governor Brown's commutation.* On October 20, 2021, Governor Brown commuted petitioner's sentence. Specifically, Governor Brown granted petitioner "the opportunity to petition [the board] for future release consideration under the process described in ORS 144.397," the statute providing for juvenile hearings. In response, in December 2021, the board sent petitioner a letter telling him that he was eligible for a juvenile hearing. Of note to this appeal, the letter required petitioner to check a box with the following statement if he wanted a juvenile hearing:

> "I would like to accept the Governor's October 20, 2021 commutation of my sentence to the possibility of parole under ORS 144.397 and request a hearing. *By doing so, I understand that I waive the possibility of requesting other types of hearings with the parole board that I may have been eligible for prior to accepting the commutation.*"

(Emphasis added.) Petitioner checked the box to request a juvenile hearing which was scheduled for December 14, 2022 (the same time frame as his previously scheduled exit interview).

---

[2] Petitioner's codefendant, Jackson, shot and killed M. Petitioner shot and killed S, M's infant daughter. In describing the offense during the juvenile hearing, petitioner stated that the reason he shot S was because he was concerned it would take a long time for her to be found and he did not want her to suffer.

In April 2022, the board notified petitioner in a letter that it had canceled his juvenile hearing due to litigation surrounding the lawfulness of Governor Brown's commutations. *See Marteeny v. Brown*, 321 Or App 250, 253, 517 P3d 343, *rev den*, 370 Or 303 (2022) (discussing history of the litigation). The letter stated that the board would automatically reschedule petitioner's juvenile hearing should the litigation resolve in petitioner's favor. The letter also informed petitioner that, if he was "eligible for any other type of parole board hearing, such as a Murder Review hearing, [he] may still apply for it when [he] become[s] eligible." The board then rescheduled petitioner's exit interview on December 14, 2022.

After the litigation resolved and concluded that the Governor had the authority to commute the sentences of juvenile offenders, *id.* at 291-93, the board sent a letter to petitioner, on September 2, 2022, asking if he wanted his hearing "changed" from an exit interview to a juvenile hearing.

Before receiving that letter, petitioner sent a letter to the board asking about the status and nature of the December 14 hearing, so he could prepare accordingly. On September 13, 2022, now in receipt of the board's September 2 letter, petitioner informed the board that he wanted a juvenile hearing. The board responded with a letter informing petitioner that he was scheduled for a juvenile hearing instead of an exit interview.

*The juvenile hearing.* Petitioner's hearing was held on December 14, 2022. Petitioner was unsuccessful. The board deferred petitioner's projected release date for 48 months, pushing it back to June 2027. The board identified multiple concerns that led it to conclude that petitioner had failed to demonstrate maturity and rehabilitation, including petitioner's combativeness during the hearing, his inability to identify triggers that might cause him to become violent again, and his reluctance to engage in cognitive programming. Of relevance to this appeal, the board considered OAR 255-033-0030(5)(k) ("the degree of premeditation or deviancy involved in the commission of the crime and the ability to understand, address, and mitigate those underlying

risk factors") and found that petitioner and his codefendant "carefully planned and committed the crime," by casing the home, bringing firearms with them, and using predetermined code words to know when to enter. The board also noted that petitioner and his codefendant had ample time during the planning of the crime to understand and discuss the risk of entering an occupied home with deadly weapons and that they discussed killing the victims so they would not be recognized. The board denied petitioner's request for administrative review and this appeal followed.

## III.   ANALYSIS

### A.   *OAR 255-033-0030(5)(k)*

We begin with the question of whether the agency's rule that allowed it to consider the premeditation and deviancy of the offense, OAR 255-033-0030(5)(k), was within its authority. Administrative agencies like the board are creatures of statute and can only act with the "power and authority as has been conferred upon it by its organic" statute. *Ochoco Const. v. DLCD*, 295 Or 422, 426, 667 P2d 499 (1983).

When reviewing an agency's actions under a statute the agency is required to administer, we first look to the terms in the statute and consider whether they are "exact," "inexact," or "delegative." *See generally Springfield Education Assn. v. School Dist.*, 290 Or 217, 221-30, 621 P2d 547 (1980) (so explaining). "'Delegative' terms 'express non-completed legislation which the agency is given delegated authority to complete.'" *Penn v. Board of Parole*, 365 Or 607, 451 P3d 589 (2019) (quoting *Springfield Education Assn.*, 290 Or at 228-29). "The only role of appellate courts with respect to such delegative terms is to ensure that the agency exercises the authority delegated to it 'within the range of discretion allowed by the more general policy of the statute.'" *Id.* (quoting *Springfield Education Assn.*, 290 Or at 229). To determine the general policy of the statute, our typical framework of statutory interpretation applies: we look to the text, context, and legislative history of the statute to discern the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

The parties agree that the policy of the juvenile hearing statute, ORS 144.397, is explained, at least in part, by subsection (5): it accounts for the fact that juveniles are "incapable of the same reasoning and impulse control as [ ] adult[s]" and have "diminished culpability." However, they dispute the intent behind subsection (13), which provides: "The board may adopt rules to carry out the provisions of this section." The parties contend, and we agree, that subsection (13) contains delegative terms. Petitioner asserts that subsection (13) only allows for the agency to promulgate procedural rules that do not, in petitioner's view, "expand" on the statutory factors the board must consider in a juvenile hearing, whereas the board argues that it allows the board to promulgate rules to assist it in making its determinations.

Ultimately, we agree with the board that the rule is within the range of discretion granted to the agency. As mentioned, the board was granted authority to hold hearings that determine a juvenile offender's demonstrated maturity and rehabilitation. And the board has also been given authority to adopt rules to carry out those hearings. Nothing in that statutory scheme suggests that the legislature intended to authorize the board to adopt *only* procedural rules for making its statutorily mandated maturity and rehabilitation determination. Rather, it is within the range of permissible discretion that the board could consider a person's premeditation and deviancy of the offense, in order to fully understand whether that person has demonstrated maturity and rehabilitation from the time of offending. We emphasize that, in applying its rules, the board may not consider the age of the person as an aggravating factor. ORS 144.397(6). Thus, while the board may consider a person's premeditation and deviancy of the offense, that consideration should be *only* for the purposes of determining maturity and rehabilitation consistent with ORS 144.397(7), and not to highlight, or give undue weight to, the crimes committed by a youth offender with "diminished culpability."[3]

To be clear: The board may not rely on premeditation and deviancy of the offense solely as a reason to deny

---

[3] It is not clear from the board's order *how* it weighed the premeditation and deviancy of petitioner's 1981 crime.

release. Any rules the board promulgates must further the legislature's intended policy goals. *See Price v. Dept. of Human Services*, 243 Or App 65, 74-76, 259 P3d 86 (2011) (reversing agency order that relied on rule that contravened statutory policy directives, notwithstanding broad grant of rulemaking authority by legislature).

### B.  *Family and Community Circumstances*

We next turn to petitioner's argument regarding "family and community circumstances." Petitioner argues that the board's conclusion that petitioner's "family and community circumstances" were not sufficiently probative of the person and the offense to warrant discussion in BAF 12 lacks substantial evidence and substantial reason.

For context: during a juvenile hearing, the board is required, by statute, to consider a person's "family and community circumstances at the time of the offense" if those circumstances are "relevant to the specific person and offense." ORS 144.397(5)(c) (family circumstances factor). In BAF 12, however, the board did not discuss or cite to that statutory factor. Petitioner, in his administrative review request, argued that that failure amounted to a violation of ORS 144.397 and of petitioner's constitutional due-process rights. In its administrative response to petitioner's request (ARR), the board maintained that it *did* consider those circumstances but found them insufficiently "probative" to discuss them in BAF 12.

On appeal, petitioner frames his argument slightly differently. He no longer argues that the board *failed* to consider the family circumstances factor. Rather, he argues that the *manner* in which the board considered that factor was wrong. That is, the board's reasons for not discussing the factor in the BAF were insufficient, or, ostensibly, the board failed to give that factor its proper weight.

We review the board's order for substantial evidence in the record. ORS 183.482(8). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." *Id.* The substantial-evidence standard requires that substantial evidence support the board's factual findings and that substantial reason support its conclusions, "*i.e.*, its conclusions

must reasonably follow from the facts found." *Simpson v. Board of Parole*, 237 Or App 661, 663, 241 P3d 347 (2010). "If the board's reasoning is not obvious, its order—which includes both the BAF and the ARR—must at least set forth the bases for its inferences." *King v. Board of Parole*, 308 Or App 716, 719, 482 P3d 110 (2021). "The board's explanation need not be complex, but it should be sufficient to demonstrate the existence of a rational basis and to allow for judicial review." *Mendacino v. Board of Parole*, 287 Or App 822, 837, 404 P3d 1048 (2017), *rev den*, 362 Or 508 (2018) (internal quotation marks and citations omitted).

As mentioned, the board explained that petitioner's family circumstances were not probative to the person or the offense. That conclusion is supported by substantial reason. The board could logically conclude, upon weighing all the evidence, that petitioner's family circumstances were not sufficiently probative to outweigh the significant amount of evidence in the record that petitioner lacked maturity and rehabilitation. In saying that, we do not wish to minimize the harm that petitioner experienced growing up in an abusive household. However, the board considered that history, balancing it against the evidence of petitioner's failure to answer basic questions about his parole plan, his inability to identify potential triggers to commit future violence, his violation of prison rules, and his lack of participation in formal cognitive and rehabilitative programming to conclude that the evidence of petitioner's family circumstances did not outweigh the evidence that petitioner lacked maturity and rehabilitation.

C.  *Substantial Evidence*

Petitioner next challenges the board's order as unsupported by substantial evidence. Specifically, petitioner challenges the following factual findings that the board made: (1) petitioner lacked insight into his triggers; (2) petitioner's 2021 rule violation showed an inability to control his impulses and consider the consequences of his actions; (3) petitioner failed to participate in cognitive or other rehabilitative programming since 2004; (4) petitioner lacked remorse; and (5) petitioner's release plan was inadequate.

When evaluating whether substantial evidence supports a finding of the board, "[w]e consider both the evidence

that supports and detracts from the board's findings, but defer to the board's reasonable inferences without reweighing the evidence in the record ourselves." *Mendacino*, 287 Or App at 834 (internal citation omitted). We have reviewed the record and conclude that all of the board's findings were supported by evidence in the record. Although petitioner points to other pieces of evidence that could have led the board to reach a different result, the board could permissibly have discredited that evidence—or given it less weight than petitioner would have—and relied on the evidence that it did.

D.   *Exit Interview*

Turning to petitioner's next assignment of error, petitioner argues that he was impermissibly forced to choose between an exit interview[4] and a juvenile hearing and requests we reverse with direction to reinstate his June 2023 release date.

1.   *Communications from the board*

Before turning to the merits, we address a dispute over the factual record, as well as the parties' arguments on preservation. The board now argues that it never forced petitioner to make a choice as to which hearing to select, notwithstanding the December 2021 letter that required petitioner to check a box requesting a juvenile hearing and "waiv[ing] the possibility of requesting other types of hearings with the parole board." The board points to its April 2022 letter to petitioner as evidence of that fact. That letter stated, in relevant part:

> "In the event that the Circuit Court's ruling in *Marteeny* is reversed or modified to allow for an early-release hearing under ORS 144.397, the Board will automatically reschedule your ORS 144.397 hearing and you do not need to reapply. If you are eligible for any other type of parole board hearing, such as a Murder Review hearing, you may still apply for it when you become eligible."

---

[4] At an exit interview, the board reviews a person's parole plan, any psychiatric or psychological report, and the person's conduct during confinement before the scheduled release of that person on parole. ORS 144.125(1). The board may postpone the person's scheduled release if it finds the person engaged in serious misconduct, if the person has a PSED that constitutes a danger to the health or safety of the community that cannot be adequately controlled, or if the person does not have an adequate parole plan. ORS 144.125(2) - (4).

That letter was insufficient to dispel the false notion that petitioner could only accept a juvenile hearing if he waived his right to an exit interview. Although the letter tells petitioner he could "apply" for *other* hearings once he became eligible, it did not mention the exit interview that was already scheduled for December. Moreover, nowhere in that letter, or in any other communication from the board, did the board tell petitioner that he was entitled to a juvenile hearing *in addition to* the previously scheduled exit interview. In fact, in the September 2022 letter, sent after *Marteeny* was decided, the board asked petitioner if he wanted to *change* his exit interview to a juvenile hearing. It was certainly reasonable for petitioner to believe he had to choose one or the other.

To summarize: the board's initial December 2021 letter explicitly conditioned acceptance of the Governor's commutation on waiver of "the possibility of requesting other types of hearings." The board's April 2022 letter did nothing to dispel the December 2021 letter. In fact, it reinforced it. Now that petitioner was no longer eligible for a juvenile hearing, he was once again eligible for an exit interview. Then, in September 2022, when the board informed petitioner that it was restarting juvenile hearings, it returned to the position it had adopted in December 2021: petitioner could exchange his exit interview for a juvenile hearing, but he could not have both.

2. *Exhaustion*

With regard to preservation and issue exhaustion, the board argues that petitioner failed to exhaust and preserve his claim of error. The board's argument relies on the fact that petitioner was represented by counsel, both in his hearing and in his petition for judicial review, and never raised any concern with the waiver that he had signed, or with the board's apparent finding that petitioner has a present severe emotional disturbance or PSED. Petitioner argues that we should waive the prudential issue exhaustion requirement in this instance and that we need not engage in a separate plain-error analysis, or, in the alternative, the board's error is plain, and we should exercise our discretion to correct it. For the reasons that follow, we conclude that petitioner is excused from raising his argument to the board.

"The general doctrine of exhaustion of administrative remedies is judicially created, a creature of the common law, and is employed by the courts *** in the interest of orderly procedure and good administration." *Tuckenberry v. Board of Parole*, 365 Or 640, 646, 451 P3d 227 (2019). "Notably, however, *** courts may relax or set aside entirely [an issue exhaustion requirement], depending on the circumstances." *Id.* at 647. The circumstances here present at least two compelling reasons to set aside the issue exhaustion requirement.

First, we note that the board, in BAF 12, alerted petitioner that he could request administrative review only of the order deferring his release, not the preceding decision that forced petitioner to choose between hearings. Thus, it is "not at all clear" that petitioner had an opportunity to challenge the board's decision. *See Watson v. Board of Parole*, 329 Or App 13, 19, 540 P3d 20 (2023) (relaxing issue exhaustion requirement when it was "not at all clear" that board actually provided registrants with opportunity to challenge specific order).

Second, petitioner "raises important issues of public interest," *Tuckenberry*, 365 Or at 655, as to how the board treats commutations that grant additional parole hearings. Petitioner was not alone in the Governor's commutation of his sentence.[5] The issues petitioner raises are thus not limited to only him.

We recognize that, unlike the petitioner in *Tuckenberry*, petitioner here was represented by counsel, who could have raised the issue at petitioner's hearing or in petitioner's review request. And had counsel done so, the parties likely would have been given a chance to develop the record, and the board would have had an opportunity to make the necessary findings. *Cf. id.* at 655 (noting that petitioner was unrepresented during administrative review "and his request for administrative review appears to be all that could be expected, given his evident educational disadvantages"). However, it is not clear that counsel was even aware of the forced waiver—a problem of the board's own

---

[5] Governor Brown commuted the sentences of 73 individuals situated similarly to petitioner. *Marteeny v. Brown*, 321 Or App 250, 253, 517 P3d 343, *rev den*, 370 Or 303 (2022).

design—which occurred 11 months before counsel's appointment. Ultimately, "given the equities and as a prudential matter," *id.*, we set aside the issue exhaustion requirement and consider petitioner's claim.

### 3.   *Merits*

Turning to the merits, we conclude that the board erred by forcing petitioner to choose between a juvenile hearing and an exit interview. As *Marteeny* made clear, the Governor's grant of clemency—in this case, her commutation of petitioner's sentence, along with the sentence of 72 other juvenile offenders who would not have otherwise been eligible for a juvenile hearing given that their sentences were imposed prior to the law taking effect—was a lawful exercise "of the broad clemency power afforded Oregon governors by constitution and statute." 321 Or App at 254. That broad power allows the Governor, in her discretion, to "choose[ ] what lesser punishment to impose" on individuals whose sentences she commutes. *Id.* at 291. Here, she commuted the juvenile offenders' sentences by providing them "with a new, less severe punishment: continued imprisonment, but with the right to a hearing" that they would not already be entitled to. Nothing in *Marteeny*, or the Governor's order, suggests that the new hearing was meant to be instead of, rather than in addition to, a juvenile hearing.

The board nevertheless argues that petitioner was not prejudiced as a result of being forced to choose between a juvenile hearing and an exit interview because he had the opportunity to litigate the board's ultimate finding that he has a PSED—a finding the board relied on to postpone his release date. That argument, however, presents several problems. For one, the board did not make the necessary finding in its order that petitioner had a PSED. The board concluded that petitioner had "a mental or emotional disturbance, deficiency, condition, or disorder predisposing him to the commission of any crime to a degree rendering him a danger to the health or safety of others." It did not make the legal determination that petitioner's "mental or emotional disturbance" was severe. *See Gordon v. Board of Parole*, 246 Or App 600, 610, 267 P3d 188 (2011) ("Whether an individual has a severe emotional disturbance is a legal, not a medical, conclusion, which the board must determine.").

The two hearings—an exit interview and a juvenile hearing—have significant differences in both purpose and process. At an exit interview, the board reviews a person's parole plan, any psychiatric or psychological report, and the person's conduct during confinement before the scheduled release of that person on parole. ORS 144.125(1). The board may postpone the person's scheduled release if it finds that the person engaged in serious misconduct, has a PSED that constitutes a danger to the health or safety of the community, or does not have an adequate parole plan. ORS 144.125(2) - (4). A juvenile hearing's purpose, by contrast, is solely to assess the person's maturity and rehabilitation. ORS 144.397(7). ORS 144.397(7).

The two different hearings also have a significant difference in process. At an exit interview, it is the board—not petitioner—that has the burden to prove petitioner has a PSED. ORS 144.125(3). By contrast, at a juvenile hearing, the petitioner has the burden to demonstrate his maturity and rehabilitation. ORS 144.397(7). Thus, as a direct result of the Governor's order granting clemency, the board deferred petitioner's release date using a *less* favorable allocation of the burden of proof for petitioner than it would have applied had the Governor not commuted his sentence and the exit interview had not been changed to a juvenile hearing.[6] In addition, had petitioner been correctly informed that the board was intending to treat the hearing as an exit interview, he could have been prepared to present evidence addressing the PSED standard contained in ORS 144.125(3), or he could have challenged the psychological report that served as the basis for the board's emotional disturbance finding. To the extent there remains any question, we conclude that petitioner is entitled to both an exit interview and a juvenile hearing, a fact that the board appears to concede.[7]

---

[6] Although a juvenile hearing may employ a less favorable allocation of the burden of proof than an exit interview, one benefit of a juvenile hearing is that a person has the right to counsel, including counsel appointed at board expense. ORS 144.397(12). At an exit interview, by contrast, there is no right to appointed counsel. *See* ORS 144.125 (explaining procedure).

[7] Petitioner also argues that the board lacked authority to defer his release date through a juvenile hearing. According to petitioner, ORS 144.397(9) only grants the board authority to postpone a subsequent *hearing*, but is silent as to its authority to postpone a *release date*. That argument, too, is unpreserved, and we decline to relax our prudential issue exhaustion requirement. Unlike the

E.   *Deferred Release Hearing*

Finally, petitioner challenges the board's decision to defer his next juvenile hearing by four years. Petitioner argues that the board's decision lacked substantial reason because it failed to explain why it chose a deferral term of four years, instead of a shorter period. We disagree.

The board may postpone a subsequent juvenile hearing for a period between two and 10 years if it finds that a petitioner has not demonstrated their maturity and rehabilitation. ORS 144.397(9). The board will consider "the factors listed in Division 62 [of Chapter 255 of the Oregon Administrative Rules] when setting a subsequent hearing date." OAR 255-033-0050(5). Here, the board considered the relevant factors—and petitioner does not appear to challenge the board's reasoning as to those factors. The board also provided an explanation as to why a shorter term would not be feasible, concluding that

> "a deferral of 48 months was the appropriate length of deferral, as that time would reasonably provide [petitioner] sufficient time to address the concerns identified in this BAF. The Board determined a shorter deferral would not provide the adequate amount of time necessary for Petitioner to address the concerns of the Board."

That was a sufficient explanation of its reasoning. *Cf. Contreras v. Board of Parole*, 297 Or App 469, 443 P3d 636, *rev den*, 365 Or 657 (2019) (reversing and remanding the board's order deferring release for eight years, notwithstanding a thorough analysis of regulatory factors, when board did not connect the factors to the length of deferral).

Reversed and remanded for proceedings consistent with this opinion.

---

argument relating to the entitlement of a hearing altogether, we see no reason that petitioner could not have raised an issue with the result of the juvenile hearing in his administrative review request of that hearing.