432 June 10, 2026 No. 519

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

DeLAINE JOHDON JONES,
*Petitioner,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A184843 (Control), A184844

Argued and submitted August 8, 2025.

Brittney Plesser argued the cause for petitioner. Also on the briefs was Oregon Justice Resource Center.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. On the brief were Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Kirsten M. Naito, Assistant Attorney General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Petitioner seeks judicial review of two final orders of the Board of Parole and Post-Prison Supervision (the board), stemming from a dual juvenile hearing and parole consideration hearing. In one order (BAF 12), the board found that petitioner had not met his burden of proof in demonstrating maturity and rehabilitation and deferred his ability to petition for a subsequent juvenile hearing for 36 months. In the second order (BAF 13), the board found that petitioner continued to remain a dangerous offender and deferred his release for 36 months.[1] Petitioner argues that (1) the board erred in holding a dual juvenile and parole consideration hearing, (2) a rule the board adopted exceeded its authority, and (3) certain parts of the board's decisions were not supported by substantial evidence and reasoning. We affirm the board's orders because it did not err in the ways petitioner contends. The board acted within its authority in holding a dual juvenile and parole consideration hearing, the rules the board adopted to facilitate its hearings were within its authority, and the board's orders were supported by substantial evidence and reasoning.

In 1988, when petitioner was 17 years old, he pleaded guilty to one count of attempted murder with a firearm and two counts of first-degree robbery with a firearm. For each count, he was found to be a dangerous offender pursuant to ORS 161.725 and was sentenced to an indeterminate term with a maximum length of 30 years, with each count to run consecutively.

Because petitioner challenges the board's decision to hold his parole hearings concurrently, we describe the circumstances around the board's decision with some detail.

In 2021, while he was still incarcerated, petitioner received a commutation from Governor Kate Brown. That commutation granted petitioner, and others similarly situated who had been convicted of crimes as juveniles, the opportunity to seek release on parole through a juvenile hearing provided for in a recently enacted statute, ORS

---

[1] Petitioner requested judicial review of the orders separately; the cases have been consolidated for our review.

144.397.[2] At that time, petitioner was already scheduled for a parole consideration hearing in June 2022, as part of his dangerous offender sentence.

In 2022, petitioner, through counsel, requested that his parole consideration hearing be postponed until summer 2023.

In January 2023, after litigation surrounding Governor Brown's commutation order concluded, petitioner received a letter from the board asking him if he "wish[ed] to accept the commutation and be scheduled for a juvenile hearing instead of a parole consideration hearing and if [he] want[ed] a [b]oard-appointed attorney or not."

In March and April, petitioner and the board engaged in some correspondence. The board emailed petitioner's attorney stating that it would be holding petitioner's hearings concurrently:

> "[T]he [b]oard's position is that if he wants a juvenile hearing, he will have a parole consideration hearing as well, a 'dual' hearing. The commutation does not take away that fact he was sentenced as a dangerous offender, FYI."

Petitioner's counsel responded to the board that petitioner wished to move forward with his juvenile hearing but did not ask to move forward with the parole consideration hearing. The board responded that it would schedule petitioner for a "dual" hearing. The board further asserted that its decision was final. The board also explained that its position was that it was "legally required to hold both a juvenile maturity hearing and a parole consideration jointly, given [that petitioner] has a current parole consideration date of April 26, 2024."

Petitioner then filed an administrative review request to challenge the board's decision to hold a dual hearing. Petitioner argued that the board action was inconsistent

---

[2] Since 2019, all persons serving a prison sentence who were convicted of an offense committed prior to turning 18 are eligible for release on parole or post-prison supervision after serving 15 years of imprisonment, regardless of any mandatory minimum sentences. ORS 144.397(1) - (2). After a person who was convicted as a juvenile has served 15 years, the board shall hold a juvenile hearing that provides the person "a meaningful opportunity to be released on parole." ORS 144.397(3).

with its administrative rules, its statutory authority, and the Oregon and United States constitutions. More specifically, petitioner contended that, by holding a dual hearing, "the [b]oard is denying [him] the benefit of his commutation by: (1) requiring he meet two distinct release standards, (2) denying him the benefit of the more robust juvenile rehabilitation hearing, and (3) denying him the opportunity to release to post-prison supervision."

On June 12, 2023, the board sent petitioner Administrative Review Response 3 (ARR 3), in which it denied petitioner's review request as premature under OAR 255-080-0011, because the board "ha[d] not issued any final [b]oard action."[3] The board, for the first time, clarified its position that petitioner would *not* be required to satisfy both applicable release standards at his dual hearing, but could obtain release if he satisfied either (or both).

The board also explained that its justification for holding a dual hearing was to reduce the administrative inconvenience and expense of holding two related release hearings so close in time to one another:

> "The Board elected, in its discretion, to schedule both mandatory hearings concurrently because of the close proximity in time with your upcoming parole consideration date, and to reduce the administrative inconvenience (including potentially to witnesses and victims) and expense associated with conducting the two related release hearings separately but only several months apart. The Board's decision to conduct those hearings concurrently did not create a new type of hearing, or otherwise alter the applicable evidentiary standards or release criteria for the separate hearings; those remain independent."

Petitioner informed the board again that he would only participate in his juvenile hearing.

On October 4, 2023, the board held petitioner's dual juvenile and parole consideration hearing. Prior to his

---

[3] OAR 255-080-0011, in relevant part, provides:

"All administrative review requests will be screened by a Board member or a Board designee who shall deny further review of the following:

"* * * * *

"(3) Board orders that are not final[.]"

hearing, petitioner made certain objections to evidence the board would receive. Of note to this request for judicial review, petitioner objected to his most recent psychological evaluation by Dr. Hamilton (Hamilton evaluation), which diagnosed him with Antisocial Personality Disorder, as hearsay and unreliable, and his prior psychological evaluations as unreliable, not current, or irrelevant. The board admitted the psychological evaluations as exhibits over petitioner's objections.

Petitioner also provided evidence to try to meet his burden to demonstrate maturity and rehabilitation. *See Jacobs v. Board of Parole*, 342 Or App 41, 55, 577 P3d 338, *rev den*, 374 Or 523 (2025) (citing ORS 144.397(7)) ("[A]t a juvenile hearing, the petitioner has the burden to demonstrate his maturity and rehabilitation."). To that end, petitioner submitted a hearing memo that included a personal statement of responsibility; application of the statutory juvenile hearing factors listed in ORS 144.397(5)[4] and relevant discretionary juvenile hearing factors listed in OAR 255-033-0030(5);[5] and a detailed release plan. Additionally,

---

[4] ORS 144.397(5) provides:

"During a hearing under this section, the board shall consider and give substantial weight to the fact that a person under 18 years of age is incapable of the same reasoning and impulse control as an adult and the diminished culpability of minors as compared to that of adults. The board shall also consider the following circumstances, if relevant to the specific person and offense:

"(a) The age and immaturity of the person at the time of the offense.

"(b) Whether and to what extent an adult was involved in the offense.

"(c) The person's family and community circumstances at the time of the offense, including any history of abuse, trauma and involvement in the juvenile dependency system.

"(d) The person's subsequent emotional growth and increased maturity during the person's imprisonment.

"(e) The person's participation in rehabilitative and educational programs while in custody if such programs have been made available to the person and use of self-study for self-improvement.

"(f) A mental health diagnosis.

"(g) Any other mitigating factors or circumstances presented by the person."

[5] OAR 255-033-0030(5) provides:

"The board, when making a determination under ORS 144.397(7) as to whether the person, based on the consideration of the age and immaturity of the person at the time of the offense, and the person's behavior thereafter,

petitioner submitted an independent psychological evaluation by Dr. Wells (Wells evaluation). That evaluation, unlike the Hamilton evaluation, diagnosed petitioner with Post-Traumatic Stress Disorder and Major Depressive Disorder, in full remission.

At the hearing, petitioner called Dr. Wells to testify about her evaluation. Dr. Wells testified about her education and experience, the type of evaluation she conducted, and how she applied her adolescent development expertise in evaluating petitioner. Petitioner testified and elaborated on his childhood experience, his crimes, and his life since he was sentenced. Petitioner, through counsel, reiterated his objection to participating in the parole consideration hearing at the same time as the juvenile hearing.

Following the hearing, the board issued two orders (BAF 12 and BAF 13). In BAF 12, the juvenile hearing

---

has demonstrated maturity and rehabilitation, may consider, among other things:

"(a) the person's involvement in correctional treatment, medical care, educational, vocational, or other training in the institution which will substantially enhance the person's capacity to lead a law-abiding life when released;

"(b) the person's institutional employment history;

"(c) the person's institutional disciplinary conduct;

"(d) the adequacy of the person's release plan including community support from family, friends, treatment providers, and others in the community; type of residence, neighborhood, or community in which the person plans to live;

"(e) the person's ability to demonstrate remorse and understanding of the impact the person's crime had on the victims and the community;

"(f) the person's attitude and evidence of behavioral change;

"(g) the extent the person takes personal responsibility for their actions;

"(h) any psychiatrist or psychologist's assessment of the person's current risk of re-offending, risk of harm, and suitability for community supervision;

"(i) the person understands long-term consequences;

"(j) the person can delay impulses and identify alternative actions;

"(k) the degree of premeditation or deviancy involved in the commission of the crime and the ability to understand, address, and mitigate those underlying risk factors;

"(l) the person, if paroled, would not be a threat to the safety of the victim, the victim's family, or the community and would comply with release conditions; and

"(m) any other relevant factors."

order, the board found that petitioner did not meet his burden of proof to demonstrate maturity and rehabilitation and deferred petitioner's ability to petition for a subsequent juvenile hearing for three years. The board explained that it reached that decision based on a number of factors, including petitioner's minimal engagement with services, his failure to engage consistently with mental health treatment, and his misconduct while incarcerated. The board also discussed the Hamilton evaluation and the Wells evaluation, considered both of their diagnoses, and observed that both evaluations noted petitioner's lengthy history of disciplinary misconduct. In deferring petitioner's ability to petition for a subsequent juvenile hearing for three years, the board explained that it relied on similar factors, including the Hamilton evaluation, sporadic engagement in treatment programs, ongoing behavioral misconduct, and mental health issues.

In BAF 13, the parole consideration order, the board found that petitioner continued to remain dangerous and deferred his next parole consideration hearing for three years. This petition for judicial review followed.

We review the board's order for legal error, *Morrison v. Board of Parole*, 277 Or App 861, 863, 374 P3d 948, *rev den*, 360 Or 465 (2016), and substantial evidence, ORS 144.335(1), (3); ORS 183.482(8), including substantial reason, *Jenkins v. Board of Parole*, 356 Or 186, 195, 335 P3d 828 (2014). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). In reviewing for substantial evidence, we defer to the board's reasonable inferences and do not reweigh the evidence. *Mendacino v. Board of Parole*, 287 Or App 822, 834, 404 P3d 1048 (2017), *rev den*, 362 Or 508 (2018). Substantial reason, on the other hand, requires that the board "articulate a 'rational connection between the facts and the legal conclusions it draws from them.'" *Jenkins*, 356 Or at 195 (quoting *Ross v. Springfield School Dist. No. 19*, 294 Or 357, 370, 657 P2d 188 (1982)).

*First Assignment of Error.* Petitioner first argues that the board erred in holding a dual juvenile and parole consideration hearing.

Before resolving petitioner's argument, however, we address the board's contention that we lack jurisdiction to review its decision because petitioner failed to file a petition for judicial review within the jurisdictional time limit. The board asserts that ARR 3—the order in which it told petitioner it would be holding a dual hearing—represented a final order and that "[n]othing prohibited petitioner from seeking review of that order *before* the board held the dual hearing." (Emphasis in original.) We disagree.

A person seeking review of a board order must file a petition for judicial review "within 60 days after the date the board mails the order disposing of the person's request for administrative review." ORS 144.335(4). Judicial review, however, is limited to final agency orders. ORS 144.335(1); ORS 183.480(3); *see also* ORS 183.315(1) (exempting the board from certain other portions of the APA). A "final order" means "final agency action expressed in writing," but does not include

"any tentative or preliminary agency declaration or statement that:

"(A)   Precedes final agency action; or

"(B)   Does not preclude further agency consideration of the subject matter of the statement or declaration."

ORS 183.310(6)(b). In determining whether an agency's order constitutes a final order, "the question is the order's place in the process of which it is a part—whether it is a preliminary step in reaching some later decision or is, itself, the ultimate decision." *Grobovsky v. Board of Medical Examiners*, 213 Or App 136, 145, 159 P3d 1245 (2007).

Here, ARR 3, in which the board stated that it intended to hold a dual hearing, was not a final order subject to judicial review, for several reasons. First, the board *itself* ruled that it had "not issued any final [b]oard action" and denied the request for administrative review as premature. That ruling indicates that its decision was merely preliminary. Second, nothing in the email conveying the board's intent to hold a dual hearing, or the denial of the request for administrative review, precluded the board from further consideration of that plan. Indeed, the board appeared to change

its mind as to the function of the dual hearing during its many communications with petitioner—including by referencing that "[t]he commutation [did] not take away [the] fact [that petitioner] was sentenced as a dangerous offender"—and petitioner continued to raise the issue with the board, when he responded to the board with his "continued belief" that he should not be subjected to a dual hearing. Thus, petitioner's challenge is timely.

Turning to the merits of petitioner's argument, petitioner raises four distinct arguments as to why that decision was erroneous. First, petitioner contends that holding a dual hearing violated the terms of the Governor's commutation by failing to give full effect to the terms of her commutation order, and by subjecting him to a more severe sentence. Second, petitioner argues that the decision violated his procedural due process rights under the Fourteenth Amendment to the United States Constitution because he lacked sufficient notice of the hearing. Third, petitioner argues that the board exceeded its authority by holding a hearing that did not have a procedure based in statute or rule. Fourth, petitioner argues that the board's dual hearing decision violated his constitutional equal protection rights because, to his knowledge, the board did not subject other similarly situated persons to dual hearings. We address each argument in turn and, for the reasons explained below, we conclude that the board did not err in holding a dual hearing.

A.   *Governor's Commutation*

Petitioner first argues that the decision to hold a dual hearing violated the Governor's constitutional clemency power. Petitioner contends that, by affording him the opportunity of release onto post-prison supervision through a juvenile hearing, the governor's commutation replaced his right to release onto parole through the parole consideration hearing process. Alternatively, petitioner contends that, even if the governor's commutation did not replace that option, a dual hearing is inconsistent with the commutation because it creates a sentence that is more severe than the original sentence. Finally, petitioner contends that holding

a dual hearing failed to give the governor's commutation "its full effect" because the commutation did not mention dual hearings.

Petitioner's arguments are foreclosed by our decision in *Jacobs*, 342 Or App at 42. As we explained in *Jacobs*, the effect of the governor's commutation was to provide petitioner "'with a new, less severe punishment: continued imprisonment, but with the right to a hearing' that [he] would not already be entitled to," *id.* at 54 (quoting *Marteeny v. Brown*, 321 Or App 250, 253, 517 P3d 343, *rev den*, 370 Or 303 (2022)), *i.e.*, a juvenile hearing. The commutation did not replace other avenues of release, nor did it make petitioner's sentence harsher. Prior to the commutation, petitioner did not have the ability to petition for release with the new juvenile hearing procedure. After the commutation, petitioner's sentence remained the same, but with the added benefit of the ability to petition for release with a juvenile hearing (including with an attorney appointed at board expense). The decision to hold petitioner's original hearing and his new hearing on the same day, as a dual hearing, did not create a harsher sentence because ultimately petitioner still received an additional opportunity for release that he would not have received otherwise.

B.  *Procedural Due Process*

Petitioner next argues that the decision to hold a dual hearing violated his right to due process guaranteed by the Fourteenth Amendment to the United States Constitution. Petitioner contends that the board violated his due process right to notice and the opportunity for a fair hearing by not clearly advising him about his prehearing decisions and the hearing process that it intended to use.

"Procedural due process imposes constraints on governmental decisions that deprive individuals of constitutionally protected liberty or property interests." *Alexander v. Board of Parole*, 205 Or App 443, 451, 134 P3d 1055, *rev den*, 341 Or 449 (2006). Thus, in analyzing a due process claim, we first look to "whether the state has deprived a person of a liberty or property interest within the meaning of the Due Process Clause," and, if so, whether it provided that person

with sufficient process. *Stogsdill v. Board of Parole*, 342 Or 332, 336, 154 P3d 91 (2007). In the context of discretionary parole release, the procedures required are "minimal." *Swarthout v. Cooke*, 562 US 216, 220, 131 S Ct 859, 178 L Ed 2d 732 (2011); *see also Smith v. Board of Parole*, 268 Or App 457, 469, 343 P3d 245, *rev den*, 357 Or 550 (2015) (relying on *Swarthout* in concluding that the ability to subpoena witnesses "is not a requirement for a constitutionally adequate parole consideration hearing").

Assuming without deciding that Oregon has created a protected liberty interest in petitioner's early release through the juvenile and parole consideration hearing procedures, we conclude that the board provided petitioner with constitutionally sufficient notice of the issues before the board and the expected hearing procedures. The board told petitioner, approximately three-and-a-half months before the hearing, that it would be holding his hearings concurrently, and that petitioner could achieve release if he satisfied either (or both) legal standards for the respective hearings. Those legal standards, and the factors that the board considers in determining whether the standards are met, are listed in statutes and administrative rules. Petitioner was able to voice objections, file a hearing memo, and present witness testimony at his hearing. Finally, the board provided its reasoning in written orders following the hearing, to allow petitioner to request administrative and judicial review. That is constitutionally sufficient due process. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 US 1, 16, 99 S Ct 2100, 60 L Ed 2d 668 (1979) (a parole process that "affords an opportunity to be heard, and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole *** affords the process that is due under these circumstances. The Constitution does not require more."); *Rivas v. Board of Parole*, 272 Or App 248, 252-53, 356 P3d 83 (2015) (observing that the liberty interest in early release under then-existing Oregon law is not more significant that the liberty interests discussed in *Greenholtz*).

C.   *Board's Authority to Hold Concurrent Hearings*

Petitioner also argues that the board lacked authority to hold his juvenile and parole consideration hearings

concurrently. Petitioner points to the statutes and rules governing juvenile hearings and parole consideration hearings and notes that they do not explicitly authorize hearings to be held on the same day or at the same time.

"Administrative agencies like the board are creatures of statute and can only act with the power and authority as has been conferred upon it by its organic statute." *Jacobs*, 342 Or App at 47 (internal quotation marks omitted). "This power includes that expressly conferred by statute as well as such implied power as is necessary to carry out the power expressly granted." *Ochoco Const. v. DLCD*, 295 Or 422, 426, 667 P2d 499 (1983). The question before us, then, is whether the legislature, either expressly or by necessary implication, granted the board the power to hold multiple hearings concurrently.

The legislature has not expressly granted the board authority to hold different hearings concurrently. The remaining question is whether that power is authorized by implication. To answer that question, we examine the statutes and rules that govern the different types of hearings.

Under the first statutory scheme, the board is required by statute to set a date for a parole consideration hearing for any person sentenced as a dangerous offender within six months after commitment to the custody of the Department of Corrections (DOC). ORS 144.228(1)(a). The parole consideration hearing date must be the date that the person would otherwise be eligible for parole under the board's rules. *Id.* At the parole consideration hearing, if the board finds the person to be no longer dangerous or finds that the person remains dangerous but can be adequately controlled with supervision and mental health treatment, and that those resources are available, the board must give the person a release date in accordance with its rules. ORS 144.228(1)(b)(A). If the board is unable to make such findings, it must periodically conduct a review hearing no less than two years, and no more than 10 years, from the date of the previous review, until the board is able to make such findings. *Id.* The board determines the date of the review hearing in accordance with rules adopted by the board. ORS 144.228(1)(b)(C). Rules adopted by the board to determine the

date of the review hearing "must be based on the foundation principles of criminal law described in section 15, Article I of the Oregon Constitution." *Id.*

Under the second statutory scheme, the board is also required by statute to hold a juvenile hearing for any person who has served 15 years of imprisonment, and who was convicted of an offense committed when they were under 18 years old. ORS 144.397(1)(a); ORS 144.397(3). That hearing must provide a person "a meaningful opportunity to be released on parole." ORS 144.397(3). During that hearing, the board "shall consider and give substantial weight to the fact that a person under 18 years of age is incapable of the same reasoning and impulse control as an adult and the diminished culpability of minors as compared to that of adults." ORS 144.397(5).

Both statutory schemes necessarily imply that the board has discretion in choosing the date and time of the respective hearings. *See* ORS 144.228(1)(a) ("The parole consideration hearing date shall be the time the prisoner would otherwise be eligible for parole under the board's rules."); ORS 144.228(1)(b)(C) ("The board shall determine the date of the review hearing in accordance with rules adopted by the board."); ORS 144.397(13) ("The board may adopt rules to carry out the provisions of this section."). Given that the board has been granted broad authority to hold hearings, determine the hearing dates, and adopt rules governing the hearings, it follows that the board has the implicit authorization to hold two hearings concurrently, as it did here.

D.   *Equal Protection*

Petitioner next contends that the board violated his state and federal constitutional rights to equal protection by holding a dual hearing. Petitioner asserts that, to the best of his knowledge, at least eight other people who received a juvenile hearing through Governor Brown's commutation are eligible for another type of parole hearing, but none of them had a dual hearing. The board counters that it was justified in holding a dual hearing here in order to economize its resources and reduce the number of hearings the victims need to attend.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws," "which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 US 432, 439, 105 S Ct 3249, 87 L Ed 2d 313 (1985). To state a successful equal protection claim as a "class of one," petitioner would need to show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 US 562, 564-65, 120 S Ct 1073, 145 L Ed 2d 1060 (2000).

Similar to the federal equal protection provision, Article I, section 20, of the Oregon Constitution prohibits laws "granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens." A claim under Article I, section 20, may be brought by an individual "who demands equality of treatment with other individuals." *State v. Davis*, 237 Or App 351, 358, 239 P3d 1002 (2010), *aff'd by an equally divided court*, 353 Or 166, 295 P3d 617 (2013). "To bring an individual-based claim under Article I, section 20, a defendant must initially show that the government in fact denied defendant individually an equal privilege with other citizens of the state similarly situated." *State v. Goacher*, 303 Or App 783, 790, 466 P3d 1047 (2020) (internal quotation marks omitted). "An agency or official's decision will comply with Article I, section 20, as long as no discriminatory practice or illegitimate motive is shown and the use of discretion has a defensible explanation in the individual case." *Id.* (internal quotation marks omitted). "An executive official's decision will be defensible when there is a rational explanation for the differential treatment that is reasonably related to the official's task or to the person's individual situation." *Id.* (internal quotation marks omitted).

Petitioner's sole argument that he has been treated differently is that, to the best of his appellate attorney's knowledge, petitioner is the only person to have been eligible for a juvenile hearing who was subjected to a dual hearing. Absent more concrete evidence—for example, the

closeness in time of the other petitioners' scheduled hearings, the resources required, or needs of any potential victims in the other petitioners' hearings—that bare statement is insufficient to demonstrate differential treatment that has no rational basis or explanation. Petitioner has not pointed to evidence in the record that would allow us, on judicial review, to find legal error in the board's orders on the basis of an equal protection violation.

*Second Assignment of Error.* Petitioner next asserts that the board erred when it found that he had not demonstrated maturity and rehabilitation for the purposes of his juvenile hearing. Petitioner provides several arguments as to why the board erred. First, petitioner argues that the board exceeded its authority under ORS 144.397(13), a statute that permits it to adopt rules regarding juvenile hearings, when it adopted and relied on substantive factors enumerated in OAR 255-033-0030(5), thereby denying him a meaningful opportunity to be released. Second, petitioner argues that the board violated ORS 144.397(5) when it failed to give substantial weight to petitioner's childhood circumstances and immaturity at the time of the crime. Third, petitioner asserts that the board's determination that he had not met his burden to demonstrate maturity and rehabilitation is not supported by substantial evidence or substantial reason. For the reasons explained below, we conclude that the board did not err; its finding that petitioner had not demonstrated maturity and rehabilitation was supported by substantial evidence and reason.

A. *OAR 255-033-0030(5)*

First, petitioner argues that the board exceeded its authority under ORS 144.397(13), a statute that permits it to adopt rules regarding juvenile hearings, when it adopted and relied on substantive factors enumerated in OAR 255-033-0030(5) in denying release. Assuming that petitioner met preservation and exhaustion requirements, his argument fails on the merits, as it is foreclosed by our decision in *Jacobs*, in which we concluded that the rule at issue was "within the range of discretion granted to the agency." 342 Or App at 48 ("Nothing in that statutory scheme suggests that the legislature intended to authorize the board to adopt only

procedural rules for making its statutorily mandated maturity and rehabilitation determination.").[6] Petitioner has not persuaded us that *Jacobs* was wrongly decided.

B.   *Childhood Circumstances*

At a juvenile hearing, the board is required to "consider and give substantial weight to the fact that a person under 18 years of age is incapable of the same reasoning and impulse control as an adult and the diminished culpability of minors as compared to that of adults." ORS 144.397(5). Petitioner argues that the board violated its statutory authority by placing too much weight on other statutory and non-statutory factors, despite petitioner providing significant information to the board about his youth, maturity, and relevant circumstances at the time of his crime.

We have reviewed the record and conclude that the board did not violate its statutory mandate to consider and give substantial weight to petitioner's diminished culpability as a youth. In its order, the board acknowledged "the trauma [petitioner] experienced as a child and teenager" and "considered extensive information regarding [petitioner's] childhood in both [his] packet and testimony at the hearing." The board did not base its decision on any culpability of petitioner for crimes committed as a youth; rather, the board based its decision on evidence of petitioner's behavior once he reached adulthood.

C.   *Substantial Evidence and Reason*

Petitioner next asserts that the board's ultimate conclusion—that he failed to establish, by a preponderance of the evidence, maturity and rehabilitation—is not supported by substantial evidence or reasoning.

When evaluating whether substantial evidence supports an agency's finding, we ask whether "the record, viewed as a whole, would permit a reasonable person to make that

---

[6]  We also emphasized in *Jacobs* that "in applying its rules, the board may not consider the age of the person as an aggravating factor." 342 Or App at 48 (citing ORS 144.397(6)). We do not understand petitioner to be advancing an argument that, in the board's application of the OAR 255-033-0030(5) factors, it impermissibly considered his age as an aggravating factor. Rather, petitioner argues that the factors *on the whole* were outside of the agency's granted authority.

finding." ORS 183.482(8)(c). "We consider both the evidence that supports and detracts from the board's findings but defer to the board's reasonable inferences without reweighing the evidence in the record ourselves." *Mendacino*, 287 Or App at 834.

Given that standard, we conclude that the board could reasonably find that petitioner failed to demonstrate maturity and rehabilitation based on the evidence that it relied on and its reasonable inferences. That evidence included petitioner's DOC records, which indicated intermittent participation in programming, chronic misconduct (including several assaults on other adults in custody), significant time in disciplinary segregation or the intensive management unit, and minimal engagement with services over the years. It also included petitioner's mental health evaluations, which showed that he struggled with depression and anxiety throughout his incarceration, but failed to attend appointments, took prescribed medications sporadically, and was caught diverting medications. The evidence further included petitioner's lack of engagement with sobriety services and petitioner's denial of a substance use problem despite ongoing marijuana use, including a positive urinalysis for marijuana approximately three months before his hearing. Most of petitioner's arguments to the contrary require us to reweigh the evidence in the record, which we are unable to do.

Petitioner also challenges the board's admission of the Hamilton evaluation, contending that "the board's admission of and heavy reliance on Dr. Hamilton's report is not supported by substantial evidence or reason[]." Petitioner argues, in the main, that the Hamilton evaluation is unreliable because it suffers from confirmation bias and cultural bias; does not provide adequate reasoning for its diagnosis; fails to give weight to petitioner's childhood trauma and other relevant factors; relies on outdated and contested information; and is hearsay. Petitioner also contends that the board did not establish Hamilton's expertise, did not certify the report as required by its rules, and did not provide him with an opportunity to cross-examine Hamilton. To the extent that petitioner argues that the board relied too heavily on the Hamilton evaluation, we reject petitioner's

argument, as it goes to the weight of the evidence and not its admissibility. However, to the extent that petitioner argues that Dr. Hamilton's report should have been excluded *in its entirety* as unreliable, we reject that argument as well, for the following reasons.

At a juvenile hearing, "[e]vidence of a type that reasonably prudent persons would commonly rely upon in the conduct of their serious affairs shall be admissible." OAR 255-030-0032; *see also* OAR 255-033-0040(1) (juvenile hearings governed by OAR 255-030-0032).[7] The board "may exclude evidence" if it is:

"(a)  Unduly repetitious;

"(b)  Not of a type commonly relied upon by reasonably prudent persons in the conduct of their serious affairs;

"(c)  Provided by a person, other than a justice system official, without first hand knowledge of the circumstances of the crime that is the subject of the proceeding before the Board;

"(d)  Provided by a person, other than a justice system official, without first hand knowledge of the character of the inmate;

"(e)  Addressing only guilt or innocence; or

"(f)  Irrelevant or immaterial to the decision(s) to be made at that particular hearing."

OAR 255-030-0032(4). The board's order must be supported by "[r]eliable, probative, and substantial evidence." OAR 255-030-0032(3).

In short, the board, by rule, has permissive authority to exclude evidence. However, there is nothing in the board's rule that would *require* it to exclude a psychological report that is deficient in the ways petitioner contends the Hamilton evaluation is deficient.

*Third and Fourth Assignments of Error.* In his third and fourth assignments of error, petitioner contends that

---

[7] It does not appear that the board has adopted similar rules for the admissibility of evidence in parole consideration hearings. However, we note that, at a parole consideration hearing, the board may review "[t]he examining psychologist or psychiatrist's written report." OAR 255-036-0005(6)(a).

the board's decisions to defer his next parole consideration hearing for three years and ability to petition for a juvenile hearing for three years were not supported by substantial evidence or reason. We have reviewed the record and conclude that the board did not err. The evidence that the board relied on included the Hamilton evaluation, which contained information on petitioner's "significant maladaptive personality traits," petitioner's comments that he continued to view violence as an appropriate response to some situations, petitioner's conduct during his hearing, petitioner's limited engagement in treatment programs, petitioner's continued substance use, petitioner's long history of disciplinary infractions, petitioner's high risk for future violence, and petitioner's refusal to participate in the parole consideration hearing. The board explained its reasoning by connecting the evidence it relied on to the relevant factors in its decision. Thus, the board did not err.

In conclusion, we affirm the board's orders because it did not err in the ways petitioner contends. The board acted within its authority in holding a dual juvenile and parole consideration hearing, the rules the board adopted to facilitate its hearings were within its authority, and the board's orders were supported by substantial evidence and reasoning.

Affirmed.